NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Crim. No. 09-CR-45 (DMC) |
| MICHAEL BRASSINGTON, PAUL | : | |
| BRASSINGTON, BRIAN MCKENZIE, | : | |
| AND JOHN KIMBERLING, | : | |
| | : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the Court upon motions by Defendants Michael Brassington, Paul

Brassington, Brian McKenzie ("McKenzie") and John Kimberling ("Kimberling") (collectively,

"Defendants") to dismiss several counts of the Superseding Indictment, for severance, for a pre-trial

hearing, for disclosure of evidence, and to prohibit the Government from referencing the jet crash

at trial.  The Court has reviewed the submissions of the parties, and for the reasons set forth below,

Defendants' requests for relief are **denied in part** and **granted in part**.

## I. BACKGROUND[1]

    On February 2, 2005, a Bombardier Challenger jet with tail number N370V ("Jet N370V"),

departing from the Teterboro Airport in Teterboro, New Jersey, failed to complete lift off, or

---

[1] The facts in the Background section have been taken from the parties' submissions.

"rotate." Instead, the jet crashed through a fence, crossed an intersection of Route 46, struck a vehicle with passengers and ultimately crashed through a clothing warehouse. The alleged resulting damage is approximately $30 million dollars. This flight was a chartered trip operated by Platinum Jet Managment, LLC ("PJM"), a luxury charter airline service, based in Fort Lauderdale, Florida.

In response, the Department of Transportation, Office of the Inspector General ("DOT-OIG"); Federal Aviation Administration ("FAA"); National Transportation Safety Board ("NTSB") and other agencies conducted an investigation concerning the source and/or cause of the crash. On August 3, 2005, the FAA, pursuant to its emergency authority under 49 U.S.C. § 46105(c), issued an emergency order of revocation, revoking Co-Defendant Michael Brassington's pilot's license, also known as an airline transport pilot ("ATP") certificate. That order of revocation alleged a number of regulatory violations, including intentional falsification of two flight logs for two charter trips, on November 1, 2004 and on December 13, 2004, allegedly conducted in violation of 14 C.F.R. § 61.59 (a) (2). The charter flights were documented in the flight logs as private or "Part 91" flights instead of commercial "Part 135" flights.

Pursuant to an appeal of that order of revocation, Administrative Law Judge ("ALJ") William R. Mullins conducted a hearing and ultimately overturned the order of revocation, finding that the FAA failed to establish that Michael Brassington intentionally falsified the flight logs on the alleged dates. On October 5, 2005, an appellate panel of the NTSB, Washington D.C affirmed the ALJ's decision.

In the years following the unsuccessful attempt to ground the PJM operation permanently, DOT-OIG continued to investigate and ultimately uncovered what is alleged to be a three year

scheme to deceive the FAA, NTSB, charter brokers and paying passengers. Specifically, the Government alleges that PJM flew more than 100 charter flights from November 2002 through November 2003 without a commercial "Part 135" certificate. Additionally, the Government alleges that when PJM entered an agreement to "piggyback" on the "Part 135" certificate of Darby Aviation, d/b/a Alphajet International, Inc. ("Darby Aviation"), a charter airline service company located in Muscle Shoals, Alabama, PJM continued the conspiracy for enrichment by falsifying dozens of FAA required documents with the purpose of concealing a variety of safety violations, including pilot rest and competency requirements, "tankering" or over-fueling the aircraft with cheap jet fuel, and falsifying dangerous weight configurations on commercial flights.

On January 23, 2009, a federal grand jury handed up a 23-Count Indictment, Criminal No. 09-45 (JAG), indicting Co-Defendants Michael Brassington, Paul Brassington, Brian McKenzie, Francis Vieira, Andre Budhan and Joseph Singh. On June 22, 2009, Andre Budhan, a co-founder and a managing member of PJM, pled guilty to Count 1 of the Indictment, charging conspiracy to commit wire fraud and to defraud the United States in violation of 18 U.S.C. § 371. On July 7, 2009, Joseph Singh, the Director of Charters and dispatcher for PJM, also pled guilty to Count 1. On November 13, 2009, the grand jury returned a 27-Count Superseding Indictment, adding Co-Defendant John Kimberling and charges against all remaining Co-Defendants.

Count 1 of the Superseding Indictment charges Co-Defendants, Michael Brassington, Paul Brassington, McKenzie, Vieira and Kimberling with conspiracy in violation of 18 U.S.C. § 371. Counts 2-22 of the Superseding Indictment charge Co-Defendants Michael Brassington, Paul Brassington, Vieira, McKenzie and Kimberling with false statements in violation of 18 U.S.C. §§ 1001, 2. Count 23 charges Michael Brassington with endangering safety of the an aircraft in

violation of 18 U.S.C. §§ 32(a)(7), 2. Count 24 charges Michael Brassington, Paul Brassington and Kimberling with false statements in violation of 18 U.S.C. §§ 1001, 2. Counts 25 and 26 charge Vieira with false statements in violation of 18 U.S.C. §§ 1001, 2. Count 27 charges Kimberling with false statements in violation of 18 U.S.C. § 1001, 2. These charges concern two aircrafts, PJM N370V, the aircraft that was the subject of the underlying crash in this matter and PJM N60S. On September 27, 2010, Vieira entered a guilty plea to Count 1 of the Superseding Indictment, charging conspiracy to commit wire fraud and to defraud the United States in violation of 18 U.S.C. § 371. The remaining counts of the Superseding Indictment remain as to Michael Brassington, Paul Brassington, McKenzie, and Kimberling.

## II. DISCUSSION

### A.    MOTION TO DISMISS COUNT 1 AS DUPLICITOUS

Count 1 of the Superseding Indictment charges Co-Defendants Michael Brassington, Paul Brassington, McKenzie, and Kimberling with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Defendant McKenzie asserts, and Defendants Kimberling, joining by way of letter in lieu of a formal brief, and Paul Brassington and Michael Brassington, joining by motion to adopt all Co-Defendants' substantive motions, that Count 1 must be dismissed as duplicitous. Defendants argue Count 1 charges as two separate conspiracies as one offense: (1) an agreement among certain PJM employees to operate as an unlicensed Part 135 charter flight operation; and (2) an agreement among certain PJM employees to "tanker" the aircraft with cheap jet fuel. By contrast, the Government maintains that only one conspiracy is at issue here, namely the financial enrichment through illegal jet carrier operations or, otherwise stated, profit from a systematic disregard of Federal Aviation Regulations.

"Duplicity is the improper joining of distinct and separate offenses in a single count." United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (citing United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975)). "Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings or endanger fair sentencing." Id. (internal citation omitted).

It is well established that "the allegation in a single count of a conspiracy to commit several crimes is not duplicitous." United States v. Reyes, 930 F.2d 310, 312 (3d Cir. 1991) (quoting Braverman v. United States, 317 U.S. 49, 54 (1942)). A single conspiracy "may be committed in alternative ways." United States v. Rigas, 605 F.3d 194, 208 (3d Cir. 2010). "'Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy.'" Id. at 209 (citing Bravernman, 317 U.S. at 53). "The conspiracy is one crime 'however diverse its objectives.'" Reyes, 930 F.2d at 312. Further, "the Double Jeopardy Clause prohibits the Government from 'splitting one conspiracy into several prosecutions.'" Rigas, 605 F.3d at 212.

The Third Circuit applies the "'totality of circumstances' test to distinguish conspiracy prosecutions based on the same conspiracy statute." Id ; see United States v. Becker, 892 F.2d 265, 268 (3d Cir. 1989)("the critical determination is whether one agreement existed"). "The ultimate goal of the totality of the circumstances test is to determine 'whether there are two agreements or only one.'" Id. at 213 (citing United States v. Smith, 82 F.3d 1261, 1267 (3d Cir. 1996). In assessing this issue, the Third Circuit considers whether:

> (a) the "locus criminis" of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted

as well as indicted coconspirators); and (d) the overt acts charged and [(e)] the role played by the defendant according to the two indictments are similar.

Id. (citing United States v. Liotard, 817 F.2d 1074, 1078 (3d Cir. 1987)). "[T]his list is not exhaustive and 'different conspiracies may warrant emphasizing different factors.'" Id. (citing Smith, 82 F.3d at 1267). The Court "must 'look into the full scope of activities described and implied in the indictments.'" Id. (citing Smith, 82 F.3d at 1267).

"'Locus criminis' is defined very simply as the 'locality of a crime; the place where a crime was committed.'" Smith, 82 F.3d at 1268. "When the activities are interdependent or mutually supportive to any degree, the inference becomes compelling that the participants are involved in but one conspiracy." Id. "Even where there are participants in one alleged conspiracy who are not involved in the activities of the other alleged conspiracy, these inferences may still have persuasive force when the common participants predominate." Id. "However, in evaluating the degree of overlap-in-participants factor in a particular case, one must look to the circumstances of both the common participants and the participants apparently connected with only one of the alleged conspiracies. When the evidence indicates that the activities of the alleged conspiracies are not interdependent or mutually supportive, and that there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other, this factor weighs heavily in favor of a conclusion that two conspiracies exist." Id. "A criminal agreement is defined by the scope of the commitment of its co-conspirators. Thus, where a defendant is unaware of the overall objective of an alleged conspiracy or lacks any interest in, and therefore any commitment to, that objective, he is not a member of the conspiracy." Id. (internal citations omitted).

The Third Circuit has "drawn a distinction between multiple and single conspiracies based upon

-6-

the existence of a commitment to a single set of objectives." Id. Key factors appear to include whether the alleged conspiracies were interdependent and/or mutually supportive, whether two groups of co-conspirators alleged to have entered two separate agreements are actually committed to the same set of objectives in a single conspiracy, whether the members of one conspiracy were aware of the objectives and activities of the other conspiracy and had some interest in the accomplishment of those objectives. Id. at 1271.

"Other factors that may prove helpful in determining whether an indictment charges one or more conspiracies [include] 'whether there was a common goal among the conspirators.'" Rigas, 605 F.3d at 213 (citing United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007)). In "considering whether the defendants had a common goal, we look to the underlying purpose of the alleged criminal activity." Rigas, 605 F.3d at 214. Another factor is "'whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators.'" Id. (citing Kemp, 500 F.3d at 287). In other words, the Court should consider "whether there was evidence that the activities of one group were necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." Rigas, 605 F.3d at 214. A final factor for consideration is "'the extent to which the participants overlap in the various dealings.'" Id. at 213 (citing United States v. Kemp, 500 F.3d at 287). In considering the overlap of participants, the focus is on "main actors." See id. at 215-16 (focusing its discussion of overlapping participants on the "main actors").

      1.    Totality of Circumstances Test:

On a motion to dismiss an indictment, the Court must assume the allegations are true. United States v. Kemp, 500 F.3d 257, 280 (3rd Cir. 2007). With this in mind, the Court applies the

totality of circumstances test.

This Court concludes, from the allegations presented, that Defendants had a common goal, namely to enrich themselves through the illegal operation of a charter jet company and systemic disregard of FAA regulations. Although employing a variety of schemes, including operating as an unlicensed Part 135 charter flight operation and "tankering" the aircraft with cheaper fuel, the underlying purpose of these activities was the same–profit.   The Defendants argue that the underlying purpose "in the first conspiracy was to operate PJM as an unlicensed Part 135 charter flight operation," while the second conspiracy was aimed at "buy[ing] as much jet fuel as possible at airports where jet fuel was cheap."  McKenzie Br. Mar. 17 at 6.  However, these arguments seem to better describe the means, rather than the underlying purpose. The underlying purpose for disguising Part 135 flights as Part 91 and for buying as much cheap fuel as possible, i.e. the ends to which these means are aimed, is to increase profit.   Therefore, this Court finds the subsidiary schemes shared a common goal.

The underlying agreement to run PJM illegally contemplated bringing about a continuous result, namely the ongoing operation of charter flights, that relied on continuous cooperation of co-conspirators.  The underlying Part 135 and "tankering" schemes were aimed at increasing the profit of PJM and each was necessary and advantageous to the success of the overall venture.

There is an overlap of individuals allegedly involved in the two conspiracies, including both indicted, such as managing members of PJM, and formerly indicted, but presently unindicted co-conspirators, Andre Budhan, Joseph Singh, and Francis Vieira.   Michael Brassington and Paul Brassington were co-founders of PJM and its managers until to its demise. McKenzie was Director of Maintenance, but it is unclear when he first joined PJM.  Kimberling, a Pilot, was hired in 2005.

Although some conspirators joined later than others, and some left earlier, this is common in a conspiracy and does not belie the existence of a single conspiracy, see United States v. Cont'l Group, Inc., 603 F.2d 444, 452 (3d Cir. 1979), particularly when the 'main actors' are the same in both underlying schemes.

Other factors also weigh in favor of finding a single conspiracy. The "locus criminis" of the two schemes overlap in that both are based on PJM headquarters and wherever the PJM aircraft is present.    With respect to the degree of temporal overlap, Count 1 charges that the conspiracy began in or about November 2002 and lasted through March 2005. The alleged operation of charter flights in the absence of a "Part 135" certificate terminates as of November 2003 when PJM entered an agreement to "piggyback "on the certification of Darby Aviation. Unlike the operation of the of the charter flights in the absence of a "Part 135" certificate, specific dates are not cited with respect to fuel "tankering" in Count 1 of the Superseding Indictment alleging Conspiracy. However, the remaining overt acts are documented as instances involving falsified flight logs, ranging from September 22, 2004 to February 22, 2005, instances where unqualified pilots operated the aircraft on or before January 14, 2005 and instances involving falsified weight-and-balance graphs, ranging from in or about August 2004 to February 1, 2005. Although the Defendants are correct in asserting that the overt acts for the "tankering" scheme begin after the Part 135 scheme has ended, this is not conclusive. During the Part 135 scheme, Defendants were not generating FAA required paperwork. Therefore, this temporal distinction is not indicative of two separate conspiracies, but rather the evolution and continuation of a single conspiracy to illegally operate a charter jet company.

Based on the totality of the circumstances, this Court finds that Count 1 charges Defendants with a single conspiracy. Accordingly, Defendants' motion for a dismissal of Count 1 of the Superseding

Indictment is **denied**.

**B.    MOTION TO DISMISS COUNTS 2 & 3 OF SUPERSEDING INDICTMENT ON GROUNDS OF RES JUDICATA/COLLATERAL ESTOPPEL**

Co-Defendant Michael Brassington moves to dismiss Counts 2 and 3 as barred by the doctrine of "res judicata, specifically issue preclusion," asserting that these counts have already been litigated between the same parties pursuant to an administrative proceeding before NTSB.[2]  By contrast, the Government asserts that res judicata does not bar the present criminal action because in accordance with United States v. Brekke, 97 F.3d 1043, 1047 (8th Cir. 1996), " a civil action may preclude a later criminal prosecution, but only if both actions are based on the same facts and both have punishment as their object."  See also United States v. Bertucci, 333 F.2d 292, 299 (3d Cir. 1964). The Government asserts that the purpose of the administrative proceeding below was remedial whereas the purpose of the criminal proceeding is penal.  Further, the Government asserts that although collateral estoppel may apply in criminal proceedings, it is a measure that should be used sparingly, particularly given the public's interest in the enforcement of criminal law.  Moreover, the Government represents that the Defendant's "success at the administrative hearing will be proven a miscarriage of justice at [the] criminal trial [and] is further reason to reject application of the collateral estoppel doctrine in this matter."  Finally, the Government cautions that application of collateral estoppel in this context would negatively effect, or chill, decisions by the executive branch to enforce regulatory schemes.  See United States v. Alexander, 743 F.2d 472, 477 (7th Cir. 1984)

"[D]isparate burdens of proof foreclose application of the issue preclusion doctrine."  In re

---

[2]Co-Defendant Paul Brassington also moves to dismiss Count 2 on statute of limitations grounds discussed below.

Braen, 900 F.2d 621, 624 (3d Cir. 1990); see Restatement (Second) of Judgments § 28(4) (1982)

(Although an issue is actually litigated and determined by a valid and final judgment, and the

determination is essential to the judgment, relitigation of the issue in a subsequent action between

the parties is not precluded . . . [if] the adversary [of the party sought to be precluded] has a

significantly heavier burden than he had in the first action); see Pittman v. La Fontane, 756 F. Supp.

834, 841 (D.N.J. 1991) ("For the assertion of issue preclusion the burden of proof in the earlier

action must be commensurate with the standard in the present action.").

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of

fact properly before it which the parties have had an adequate opportunity to litigate, the courts have

not hesitated to apply *res judicata* to enforce repose." Astoria Fed. Sav. & Loan Ass'n v. Solimino,

501 U.S. 104, 106 (1991).  However, judicially unreviewed findings of an administrative agency

have no preclusive effect on federal proceedings.  Id.   In Astoria, the Supreme Court looked to the

statute at issue to determine whether administrative issue preclusion applied in a subsequent federal

court proceeding.  The Court asserted that "[a]dministrative findings with respect to the age-

discrimination claims of federal employees enjoy no preclusive effect in subsequent judicial

litigation." Id. at 113; see Rosenfeld v. Department of Army, 769 F.2d 237 (4th Cir. 1985).  Notably,

Astoria involved civil proceedings, where concern for judicial economy often counsels in favor of

res judicata or collateral estoppel.  See Standefer v. United States, 447 U.S. 10, 25 (1999).


Collateral estoppel can apply in a criminal case even when the prior proceeding was civil.  Yates

v. United States, 354 U.S. 298, 335 (1988).  However, the doctrine should only be applied in

criminal cases sparingly.  Alexander, 743 F.2d at 476.  Criminal cases involve "'competing policy

considerations' that outweigh the economy concerns that undergird the estoppel doctrine." <u>Id</u>.  As

the Supreme Court stated

> "[T]he purpose of a criminal court is ... to vindicate the public interest in the
> enforcement of the criminal law while at the same time safeguarding the rights
> of the individual defendant. The public interest in the accuracy and justice of
> criminal results is greater than the concern for judicial economy professed in
> civil cases and we are thus inclined to reject, at least as a general matter, a rule
> that would spread the effect of an erroneous acquittal to all those who
> participated in a particular criminal transaction. To plead crowded dockets as
> an excuse for not trying criminal defendants is in our view neither in the best
> interests of the courts, nor the public."

<u>Id</u>. Additionally, at least one circuit has found that giving prior administrative findings preclusive

effect in a criminal case would not only "present a debilitating impediment to the enforcement of the

federal criminal law," but also "affect seriously the executive branch decisions to enforce regulatory

schemes."  <u>Alexander</u>, 743 F.2d at 476.

In the case at hand, a hearing was conducted before an ALJ of the NTSB, William R. Mullins,

on August 30, 2005.  Pursuant to that hearing, the ALJ concluded the Government had not proved

its claims against Michael Brassington alleging falsification of flight records on November 1, 2004

and December 13, 2004.  Specifically, the ALJ indicated that the Government was required to

demonstrate intentional falsification of records.  On the record, the ALJ held, "[s]pecifically, I find

that there was not established by a preponderance of the evidence, the regulatory violations involving

intentional falsification, which was FAR 61.59 (a) (2)."  (Tr. 353, 1-4).  Subsequently, the order on

the record was appealed and affirmed by an appellate panel of the NTSB on October 5, 2005.

As an initial matter, the burden of proof in the administrative proceeding (preponderance of the

evidence) is disparate from the burden of proof required in the criminal proceeding (beyond a

reasonable doubt).  Similarly the two proceedings represented different causes of action as the

administrative action sought revocation of Defendant's license, whereas the criminal proceeding has punishment as its goal. Beyond this, the risk of applying issue preclusion in a criminal proceeding on the basis of an administrative finding, which is not subject to judicial review or the same evidentiary safeguards as a federal court proceeding, is grave, particularly given the public's interest in enforcement of criminal law. Moreover, the application of the doctrine of collateral estoppel with respect to Counts 2 and 3 threatens a result of inconsistent judgments with respect to other Co-Defendants implicated in those Counts as a consequence of the same underlying conduct and with respect to the same allegedly offensive conduct on different occasions. Finally, this Court is concerned about the potential chilling effect on administrative agencies' enforcement of regulatory schemes.

Given its sparing application in criminal proceedings, and the potential negative effects of applying the doctrine in this case, this Court finds that Defendants' motion for a dismissal of Count 2 and 3 of the Superseding Indictment based on res judicata/collateral estoppel is **denied**.

C.      **MOTION TO DISMISS COUNTS 2, 8, 9 & 10 OF SUPERSEDING INDICTMENT AS TIME-BARRED**

Defendants McKenzie and Michael Brassington move to dismiss Counts 8, 9 and 10 as time-barred. McKenzie asserts that he was not named in any of the false statement counts contained in the Original Indictment, therefore, the counts adding McKenzie in the Superseding Indictment are time-barred. Michael Brassington asserts that although he was named in false statement counts in the Original Indictment, none of those counts related to the weight and balance of the aircraft. Michael Brassington argues that the inclusion of these counts in the Superseding Indictment broadens the original charges, and therefore these counts should be dismissed as time barred. Paul

Brassington moves for dismissal with respect to Counts 2 and 8 as time-barred.[3]  Similar to McKenzie, Paul Brassington was not named in any of the false statement counts contained in the Original Indictment.  The Government asserts that these false statement counts present a continuing offense[4] essentially tolling the statute of limitations because 14 C.F.R. § 135.63(d) imposes upon a pilot a duty to maintain copies of a completed load manifest for at least 30 days.  Therefore, the Government contends that the statute of limitations does not begin to run until the expiration of that thirty-day period for each offense.[5]

Pursuant to 18 U.S.C. § 1001, statements or entries generally, "[e]xcept as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined, imprisoned not more than 5 years . . ."  Section 1001 "is governed by the five-year statute of limitations generally applicable to the criminal code provisions of Title 18." United States v. Curran, 20 F.3d 560, 564 (3d Cir. 1994); see 18 U.S.C. § 3282 ("Offense not capital, (a) In general. Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted

---

[3]Defendant Paul Brassington is not charged in Count 8, and therefore lacks standing to challenge this Count as being time-barred.

[4]Whether an offense is considered "continuing" for statute of limitation purposes is a separate inquiry from whether an offense is "continuing" for venue purposes.

[5]This argument is convoluted and unavailing.  See Toussie v. United States, 397 U.S. 112, 114-155 (1970).

-14-

within five years next after such offense shall have been committed.").

Count 2 alleges Paul Brassington made a false statement on November 1, 2004 relating to the operation of a commercial flight as a Part 91 flight.[6]  Counts 8, 9 and 10 allege that Michael Brassington and McKenzie made false statements on November 2, 2004, November 10, 2004 and November 12, 2004 respectively, relating to the weight and balance graphs.  Defendants argue that because the Superseding Indictment was not handed up until November 13, 2009, these Counts are time-barred.

The Third Circuit held that a "superseding indictment returned while the original indictment is validly pending is not barred by the statute of limitations if it does not expand the charges made in the initial indictment." United States v. Friedman, 649 F.2d 199, 204 (3d Cir. 1981)(adopting United States v. Grady, 544 F.2d 598, 601-02 (2d Cir.1976)).  Accordingly "the day on which the original indictment was filed controls for statute of limitation purposes, provided that... the superseding indictment does not materially broaden or substantially amend the charges in the first." United States v. Oliva, 46 F.3d 320, 324 (3d Cir.1995)(citing Friedman, 649 F.2d at 203-04). "Since the statute stops running with the bringing of the first indictment, 'a superseding indictment brought at any time while the first indictment is still validly pending... cannot be barred by the statute of limitations," United States v. Korey, 614 F. Supp. 2d 573, 578 (W.D. Pa. 2009) (citing Friedman, 649 F.2d at 204), provided it does not materially broaden or substantially amend the original charges.  Whether the superseding indictment materially broadens or substantially amends the original charges turns on whether the defendant was provided sufficient notice.  United States v. Birks, 656 F. Supp. 2d

---

[6]Count 2 also charges Michael Brassington with a false statement.  However, this charge is identical to the charge in the Original Indictment and accordingly Michael Brassington has not moved to dismiss it on these grounds.

454 (D.N.J. 2009). In determining whether the original indictment gave the defendant sufficient notice, "the Court will consider 'whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." Id. (citing United States v. Salmonese, 352 F.3d 608, 622 (2d Cir. 2003)).

The Original Indictment was returned on January 23, 2009, which was within the five year statute of limitations period for all charged offenses. Therefore, these counts cannot be dismissed based on statute of limitations unless the Superseding Indictment materially broadens or substantially amends the original charges. The disputed counts are repetitious of the substantive charges already present in the Original Indictment. The only distinction is that the Superseding Indictment implicates Co-Defendants in connection with these incidents who, although were implicated in the Original Indictment, were not formerly charged with respect to the counts at issue. All moving Co-Defendants were implicated in connection with Count 1 alleging Conspiracy. Count 1 of the Original Indictment asserted that "in connection with the conspiracy that defendants Michael Brassington, Francis Vieira and others would: falsify weight-and-balance graphs . . ." Counts 2 through 19 of the Original Indictment alleged false statements, identifying and implicating Michael Brassington, Joseph Singh and Francis Vieira on different dates.

Although implicated in the Original Indictment through the conspiracy charge, Paul Brassington and McKenzie were not charged in any of the false statement counts. Including these counts in the Superseding Indictment therefore materially broadens and substantially amends the charges against these Defendants, and they must be dismissed because they are beyond the statute of limitations. Defendant Paul Brassington's motion to dismiss Count 2 as time barred is **granted**. Defendant McKenzie's motion to dismiss Counts 8, 9, and 10 as time barred is **granted**.

-16-

Michael Brassington was charged in the Original Indictment with conspiracy and several false statement counts. However, these three additional false statement counts charge Defendant with making false statement on additional dates and concerning a different matter than what was charged in the Original Indictment, and therefore proof of these charges will depend on different evidence. Additionally, these counts expose the Defendant to a potentially greater sentence. Therefore, these charges materially broaden and substantially amend the charges in the Original Indictment and must be dismissed on the grounds of statute of limitations. Defendant Michael Brassington's motion to dismiss Counts 8, 9, and 10 is **granted**.

### D.    MOTION TO DISMISS COUNTS 9, 11, 13, 16, 19, & 22 OF SUPERSEDING INDICTMENT FOR IMPROPER VENUE

Vieira moved for dismissal of Counts 9, 11, 13, 16, 19 & 22 on the grounds of improper venue. As discussed above Vieira has already pled guilty, and so his motion is moot. However, Defendants Michael Brassington, Paul Brassington, and McKenzie moved to join and adopt Vieira's motion for dismissal of these Counts on improper venue grounds, and therefore this Court will decide the motion.

Counts 9, 11, 13, 16, 19, and 22 all involve flights departing from various locations and arriving in New Jersey. Defendants assert that the weight and balance graphs at issue were prepared and faxed to Alphajet in Alabama prior to departure. "Upon returning to [PJM's] headquarters in Ft. Lauderdale, FL, the original paperwork to the trip itinerary/manifest, the flight log, the weight & balance graphs, fuel receipts, and other expenses," were given to the Director of Operations. Viera Br. May 12 at 4. Specifically, Defendants argue that no weight and balance graph was made, sent,

or received in New Jersey.  Since false statements are a continuing offense,[7] venue is only proper

where the crime was begun, continued or completed.  Defendants argue that in determining where

a crime occurred, the Court must focus on the essential conduct element, and not on effects of the

crime.  According to Defendants, since nothing was prepared in, or faxed to or from, New Jersey no

essential conduct element occurred within New Jersey, and therefore venue is improper.

The Government counters that venue is proper because "the weight and balance graphs, together

with other documentation reflecting the required load manifest information, were carried on board

the aircraft to its destination" in New Jersey.  Gov. Br. June 11 at 5.  The Government argues that

FAA Part 135 regulation 14 CFR § 135.63(d)[8] required the weight and balance graphs be carried on

board to the plane's destination in New Jersey, and under regulation 14 CFR § 135.73[9] the FAA had

the authority to inspect the weight and balance reports.  The Government further points out that FAA

regulations "relating to required load manifests for Part 135 flights do not call for any documents to

be filed with or mailed or sent to any FAA office."  Gov. Br. June 11 at 7. In summary, the

Government argues that since each of the weight and balance graphs "is a materially false statement

carried on an aircraft to Teterboro, New Jersey in a matter within the jurisdiction of the FAA and

subject to FAA inspection at Teterboro," venue is proper.

"The Government bears the burden of proving venue by a preponderance of the evidence and

---

[7] For the purpose of their motion to dismiss, Defendants have conceded that false statements are continuing offenses since on a motion to dismiss an indictment the Court must take the allegations as true.

[8] "The pilot in command of an aircraft for which a load manifest must be prepared shall carry a copy of the completed load manifest in the aircraft to its destination."

[9] "Each certificate holder and each person employed by the certificate holder shall allow the [FAA], at any time or place, to make inspections or tests (including en route inspections) to determine the holder's compliance with the Federal Aviation Act of 1958, applicable regulations, and the certificate holder's operating certificate and operations specifications."

venue must be proper for each count of the indictment." United States v. Root, 585 F.3d 145, 155-156 (3d Cir. 2009). "Proper venue in criminal trials is more than just a procedural requirement; it is a constitutionally guaranteed safeguard." Id. A defendant has a constitutional and statutory right to be tried in the district where the crime was committed. See United States v. Rodriguez-Moreno, 526 U.S. 275, 278 (1999).[10] "'[T]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." Rodriguez-Moreno, 526 U.S. at 278-79.

Under 18 U.S.C. § 1001, it is unlawful to knowingly and willfully make a materially false statement in a matter within the jurisdiction of the United States. Section 1001 does not have a specific venue provision. Venue for § 1001 is determined based on the general venue statute 18 U.S.C. § 3237(a), which provides in relevant part "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed"(emphasis added). "When a crime consists of a single, non-continuing act, the proper venue is clear: The crime 'is 'committed' in the district where the act is performed.'" United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005)(internal citations omitted). "In some cases, however, 'the [C]onstitution does

_____

[10]"Article III of the Constitution requires that '[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed.' Art. III, § 2, cl. 3. Its command is reinforced by the Sixth Amendment's requirement that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed,' and is echoed by Rule 18 of the Federal Rules of Criminal Procedure ('prosecution shall be had in a district in which the offense was committed')." Rodriguez-Moreno, 526 U.S. at 278 (1999).

not command a single exclusive venue.'" Id.  "The locality of a crime for the purpose of venue extends 'over the whole area through which force propelled by an offender operates.'" United States v. Root, 585 F.3d 145, 156 (3d Cir. 2009).  Thus, "where 'the acts constituting the crime and nature of the crime charged implicate more than one location,' venue is properly laid in any of the districts where an essential conduct element of the crime took place."  Ramirez, 420 F.3d at 139.  "Venue is only improper 'if the only acts that occurred in that district do not provide evidence of the elements of the charged crime.'" United States v. Ringer, 300 F.3d 788, 792 (7th Cir. 2002).

"Case law makes it clear ... that a violation of § 1001 does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was contemplated that the statement was to be utilized in a matter which was within the jurisdiction of such department or agency."  United States v. Candella, 487 F.2d 1223, 1227 (C.A.2, 1973); see also United States v. Ross, 77 F.3d 1525, 1544 (7th Cir. 1996)(finding application of § 1001 is not limited to false statements submitted directly to a department or agency).  "In order to determine when a matter comes 'within the jurisdiction' of an agency or department of the United States it is necessary to examine, in addition to § 1001, the statute governing the particular transaction with a department or agency of the United States." United States v. Herberman, 583 F.2d 222, 226 (5th Cir. 1978).  Here, FAA Part 135 regulations 14 CFR §§ 135.63(c), 135.63(d), and 135.73 requires (1) a load manifest, which includes the weight and balance graphs, be prepared, (2) a copy carried on the aircraft to its destination, and authorizes (3) FAA inspection of the load manifest at the destination, respectively.

Defendants rely heavily on a Fourth Circuit case to argue that venue is appropriate only in districts where essential conduct elements transpired, and that effect of a crime can only be

considered for venue purposes when a statute is defined in terms of such effects. United States v. Bowens, 224 F.3d 302, 309 (4th Cir. 2000); but see Rodriguez-Moreno, 526 U.S. at 279, n. 2 (declining to reach government's argument that venue may be based upon the effects of a defendant's conduct other than the one in which he performs the acts constituting the offense). However, the Bowens case dealt with venue as it applies to 18 U.S.C. § 1071 (harboring a fugitive), not false statement charges under §1001. This Court finds cases considering the proper venue for false statement charges under §1001 more instructive.

In United States v. Candella, false affidavits relating to moving expenses that were to be refunded through a federal government agency were prepared and filed by the defendant in the Eastern District of New York, and transferred by city officials to the Southern District of New York where they remained for subsequent audit by the federal agency. 487 F.2d 1223, 1224-25 (2d Cir. 1973). The Second Circuit upheld venue in the Southern District of New York, finding venue to be "properly laid in 'the whole area through which force propelled by an offender operates.' The force propelled here by the defendants immediately contemplated [the Southern District]. 18 U.S.C. § 1001 defines the offense as the making of a false or fraudulent statement or representation in a matter within the jurisdiction of a federal agency.... The statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in [the Southern District]." Id. a 1228 (internal citations omitted); see also Ramirez, 420 F.3d at 142-43(finding venue proper in New York, even though defendant filed fraudulent document in New Jersey and New Jersey agency forwarded the document to New York for review, reasoning that "although enough had been done in [New Jersey] to constitute a crime there... it does not follow that the crime then terminated, and that what transpired in [New York] was irrelevant for venue

purposes").

In <u>United States v. Salinas</u>, the First Circuit found that venue for false statements can be based on the effect of the false statement because of the materiality element. 373 F.3d 161, 166-67 (1st Cir. 2004);[11] <u>see</u> <u>also</u> <u>Ringer</u>, 300 F.3d at 792 (finding venue proper in the district where the effects of the false statement were felt because necessary to establish materiality of the false statement). The First Circuit stated "courts consistently treat section 1001 crimes as continuing offenses, but that taxonomy is dictated by the terms of the statute. Section 1001 explicitly criminalizes only those false statements that are material. When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt." <u>Salinas</u>, 373 F.3d at 166-67 (internal citations omitted).

This Court is persuaded by the First and Second Circuit cases, and is satisfied that the Government has met its burden of proving venue is proper by a preponderance of the evidence. In this case, although in preparing and sending the weight and balance reports Defendants may have done enough to constitute a crime in another district, it does not follow that the crime terminated or that what transpired in New Jersey was irrelevant for venue purposes. This is particularly so since false statements are considered continuing offenses due to the materiality element. FAA regulation 14 CFR § 135.63(d) created a continuing duty to carry the load manifests, including the weight and balance reports, to the flights' destination in New Jersey. While in New Jersey, the FAA had the authority to inspect the load manifests under 14 CFR § 135.73. The weight and balance reports were

---

[11]In <u>Salinas</u>, the First Circuit overturned defendant's conviction for passport fraud due to improper venue after finding that passport fraud is a point in time offense. However, the First Circuit distinguished passport fraud from false statement charges, and found that venue for the false statement charges was proper in either the district where the false statement was made, or where the false statement was processed (i.e. its effects were felt).

carried into New Jersey, where they continued to be false and continued to be within the jurisdiction of the FAA.  Therefore, the weight and balance graphs constitute false statements made in New Jersey in a matter within the jurisdiction of the FAA.  Since these offenses were committed in New Jersey, venue is proper.  Accordingly, Defendants' motion is **denied**.

### E.    MOTION FOR SEVERANCE

Defendant Michael Brassington moves for severance from Co-Defendant Vieira.  As noted above, Vieira pled guilty on September 27, 2010.  Accordingly, Michael Brassington's motion is moot and hereby **denied**.  Defendants McKenzie, Kimberling, and Paul Brassington move for separate trials pursuant to Federal Rule of Criminal Procedure 14, the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment.   Under Fed. R. Crim. P. 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Defendants allege that there is substantial danger that a joint trial will impair Constitutional rights and substantially prejudice moving Defendants.  Further, Defendants argue that although Fed. R. Crim. P. 8 permits joinder of defendants, it does not require joinder, but rather is discretionary.

The bulk of Defendants' arguments, which were made prior to Vieira's plea, focus on an alleged confession or admission by Co-Defendant Vieira and the effect of its introduction by the government at trial.  Since Vieira pled guilty, these arguments are moot and will not be discussed further.[12] However, Defendants McKenzie and Kimberling also argue for severance based on the self-

---

[12]To the extent Defendants are concerned with admissions of any other Co-Defendants, it is worth noting that the Government has already asserted its intent to fully comply with Bruton.

described "minor role" attributed to each defendant, Dratch Ltr. Apr. 1, McKenzie Br. Mar. 17, and concerns of the jury's inability to compartmentalize the evidence.

"'There is a preference in the federal system for joint trials of defendants who are indicted together,' because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" United States v. Silveus, 542 F.3d 993, 1005 -1006 (3d Cir. 2008)(citing Zafiro v. United States, 506 U.S. 534, 537 (1993)). (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)).  "A district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would (1) compromise a specific trial right of the defendants, or (2) prevent the jury from making a reliable judgment regarding guilt or innocence." United States v. Heilman, 2010 WL 1583097, *32 (3d Cir. Apr. 21, 2010) (citing Zafiro, 506 U.S. at 539). "Nonetheless, less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. (citing Zafiro, 506 U.S. at 539)(approving instructions to compartmentalize evidence, placing burden on government, and to find guilt beyond a reasonable doubt)).

"The choice of whether to sever is committed to the sound discretion of the trial judge."United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005).  "Defendants seeking to sever bear a 'heavy burden.'" Id.  "[A] trial court should balance the public interest in joint trials against the possibility of prejudice inherent in the joinder of defendants." United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991)(citing United States v. De Peri, 778 F.2d 963, 983 (3d Cir. 1985)). "Ordinarily, defendants jointly indicted should be tried together to conserve judicial resources." Id. (citing United States v. Sandini, 888 F.2d 300, 305-06 (3d Cir. 1989)). "The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants

charged with a single conspiracy." Id. (internal citation omitted). "It is not sufficient for [a defendant] . . . merely to allege that severance would have improved his chances for acquittal." Id. (citing Sandini, 888 F.2d at 307). "With respect to prejudice, the proper question [ ] is whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence." Id. (citing De Peri, 778 F.2d at 984). "Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant." Id. "Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance." Id. (citing United States v. Sebetich, 776 F.2d 412 (3d Cir. 1985)). As the Third Circuit has "long held... '[a] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than that against him.'" Urban, 404 F.3d at 776.

Here, Defendants have not satisfied their heavy burden of showing a severance is required. Defendants McKenzie, Kimberling, and Paul Brassington are charged with their Co-Defendants in Count 1 with a single conspiracy, and each is implicated with one or more Co-Defendant in the false statement counts. As such, if separate trials were granted, the same evidence would be presented at separate trials. Although evidence relating to the conspiracy may be more damaging to their Co-Defendants, and moving Defendants may stand a better chance of acquittal in separate trials, these are not sufficient justifications for ordering severance. Any risk of prejudice can be cured by limiting instructions. The jury will be given appropriate limiting instructions instructing them to compartmentalize the evidence and to consider each charge and each defendant separately and

individually.[13]  Defendants' motion for severance is **denied**.[14]

F.    MOTION FOR PRE-TRIAL HEARING TO ESTABLISH CONSPIRACY

Defendants move for the Court to conduct a pretrial hearing to establish participation in the conspiracy.

"[A]s a prerequisite for the submission of co-conspirator statements to the jury, the court must determine that the government has 'established the existence of the alleged conspiracy and the connection of each defendant with it by a clear preponderance of the evidence independent of the hearsay declarations.' This determination is to be made by the court before the co-conspirator statements are submitted to the jury." United States v. Ammar, 714 F.2d 238, 246 (3d Cir. 1983)(citing United States v. Continental Group, Inc., 603 F.2d 444, 457 (3d Cir. 1979).  A co-conspirator statement may be admitted under Fed. R. Evid. 801(d)(2)(E) if it meets three conditions: (1) there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it; (2) the statement must have been made in furtherance of the conspiracy; and (3) it must have been made during the course of the conspiracy.  "This determination is to be made by the court before the co-conspirator statements are submitted to the jury." Id.  "[T]he control of the order of proof at trial is a matter committed to the discretion of the trial judge." Id. In Ammar, the Third Circuit affirmed a district court's denial of defendant's motion to hold a pre-

---

[13]It is worth noting that the Third Circuit in Urban cited favorably the district court's express instructions "to the jury to compartmentalize the evidence, stating in its instructions that 'the fact that you may find a defendant guilty or not guilty of one of the offenses should not control your verdict as to any of the other offenses charged,' and that 'you must give separate and individual consideration to each charge against each defendant.'" Urban, 404 F.3d at 776.

[14]There will be a further and separate order issued today with regard to severance for Kimberling.  This Court finds that due to medical and financial conditions beyond Kimberling's control, the interests of justice require severance and transfer to Southern District of Florida.

trial hearing to establish a conspiracy on the grounds that it would create a mini-trial. <u>Id</u>. In affirming the denial, the Third Circuit noted that the district court stated

> that at the request of the defendant at any time prior to testimony by a co-conspirator, the court will determine whether there is or is not sufficient threshold evidence of a conspiracy of which defendant was a member or what specifically must still be proved and the government, of course, will be required to submit such further evidence or else suffer the possibility of a mistrial.

<u>Ammar</u>, 714 F.2d at 246.

A pretrial hearing is not necessary to address the existence of, and each Co-Defendants scope and participation in, the conspiracy. Before a co-conspirator's statement is admitted, this Court will determine whether there is sufficient threshold evidence of a conspiracy to admit the statement. Defendants' motions are **denied**.

## G.    MOTION FOR DISCLOSURE OF RULE 404(B) EVIDENCE

Co-Defendant McKenzie moves for prompt disclosure of Rule 404(b) material. Fed. R. Evid. 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

By way of order, dated December 3, 2009, the Honorable Joseph A. Greenaway, Jr. directed that the Government provide Rule 404(b) material no later than ten (10) calendar days before trial. This

Court, having determined the prior order is appropriate, and provides Defendant with reasonable notice in advance of trial, finds no reason to disturb Judge Greenaway's order. Defendant's motion is **denied**.

## H.    MOTION FOR DISCLOSURE OF PERSONNEL FILES, INTERNAL AFFAIRS FILES, AND ANY AND ALL DISCIPLINARY FILES OF LAW ENFORCEMENT WITNESSES

Co-Defendants Michael Brassington and Paul Brassington move for disclosure of internal affairs files, personnel files, and any and all disciplinary files of Special Agent Richard M. McGrade, the main investigating agent in this case, as well as all law enforcement witnesses the Government intends to call at trial. In response to Defendants' motion, and in accordance with its standard practice, the Government has agreed to disclose any Brady[15] or Giglio[16] material found in its witnesses' personnel files within three days of the particular witness' testimony. The Government has further agreed to submit any ambiguous material to the Court for an *in camera* review to determine whether it constitutes Brady or Giglio material.

In United States v. Dent, 149 F.3d 180 (3d Cir. 1998), the Third Circuit affirmed the district court's denial of defendant's motion to subpoena a police officer's personnel file. As the Third Circuit stated,

> although Brady v. Maryland, ... mandates that the prosecution disclose impeachment material that is exculpatory to the defendant, *it does not require that the prosecution make the file available for the defendant's general perusal*. Instead, the government need only direct the custodian of the files to inspect

---

[15] Under Brady v. Maryland, 373 U.S. 83, 87-88 (1963), the government is required to disclose exculpatory evidence that is material to guilt or punishment upon request by the defendant.

[16] Under Giglio v. United States, 405 U.S. 150, 154 (1972), the government must disclose evidence affecting credibility of a witness when the reliability of said witness may be determinative of guilt or innocence.

them for exculpatory evidence and inform the prosecution of the results of that inspection, or, alternatively, submit the files to the trial court for <u>in camera</u> review.

<u>Id</u>. at 191 (emphasis added).  Since the Government, in accordance with Third Circuit law, has agreed to inspect its witnesses' personnel files and disclose any <u>Brady</u> or <u>Giglio</u> material, the Defendants' motion is **denied**.

I.    MOTION TO PRECLUDE THE GOVERNMENT FROM REFERENCING OR INTRODUCING EVIDENCE REGARDING THE CRASH OF JET N370V

Co-Defendants McKenzie, Paul Brassington, and Kimberling move to preclude the Government from referencing or introducing evidence regarding the crash of Jet N370V.  The Defendants argue that evidence of the jet crash is not relevant to the charged offenses, and, even if relevant, should be excluded because of unfair prejudice.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Relevancy "'exists only as a relation between an item of evidence and a matter properly provable in the case.'  Because the rule makes evidence relevant 'if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.'"  <u>Spain v. Gallegos</u>, 26 F.3d 439, 452 (3d Cir. 1994) (citing 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5166, at 74 n. 47 (1978)).  "Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant." <u>Id</u>.

However, relevant evidence may be excluded under Fed. R. Evid. 403 "if its probative value is <u>substantially</u> <u>outweighed</u> by the danger of unfair prejudice, confusion of the issues, or misleading the

jury" (emphasis added). "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002). The balancing test "'places on one side the maximum reasonable probative force for the offered evidence.'" Id. at 1344 (citing *Federal Rules of Evidence Manual* 242 (Stephen A. Saltzburg et al. eds., 7th ed. 1998)). In determining the probative value of evidence, the Court must consider "'the extent to which it tends to demonstrate the proposition which it has been admitted to prove, [and] the extent to which that proposition was directly at issue in the case.'" Blancha v. Raymark Industries, 972 F.2d 507, 516 (3d Cir. 1992) (citing United States v. Herman, 589 F.2d 1191, 1198 (3d Cir.1978), *cert. denied,* 441 U.S. 913 (1979)). The other side of the balancing equation includes "'the *likely* prejudicial impact of the evidence.'" Coleman, 306 F.3d at 1344 (citing *Federal Rules of Evidence Manual* 242 (Stephen A. Saltzburg et al. eds., 7th ed. 1998)). Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, ... an emotional one." United States v. Cross, 308 F.3d 308, 324 (3d Cir. 2002). In determining unfair prejudice, the focus of the inquiry "must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by *illegitimate* means." United States v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992). "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative." Blancha v. Raymark Industries, 972 F.2d 507, 516 (3d Cir. 1992)(emphasis added); see also Coleman, 306 F.3d at 1343 (stating "there is a strong presumption that relevant evidence should be admitted"). "The balance under the rule should be struck in favor of admissibility." Blancha, 972 F.2d at 516 (emphasis added).

Defendants argue that evidence of the jet crash is not relevant because (1) the Superseding Indictment does not charge that the crash of Jet N370V was a criminal act; (2) the offenses alleged in

the Superseding Indictment, if proven, are crimes regardless of the jet crash; and (3) the crash is not an element of any charged offense.  McKenzie Br. Sept. 27 at ¶ 5. Defendants further argue that evidence of the jet crash should be excluded under Rule 403.  Specifically, the Defendants argue that evidence of the crash would "be intended solely to scare the jury and to appeal to the jurors' emotions," Id. at ¶ 6, "unfairly prejudice the defendants," Id. at ¶ 7, and "confuse and mislead the jury as to the important issues in the case and elements of the charged offense." Id. at ¶ 10.

In response, the Government argues the "crash is the irremovable backdrop of each [and] every charge in this case," Gov. Br. Oct. 2 at 7.  Specifically, the Government argues the crash is the "most compelling evidence of" and  "intrinsic to the offense" of endangering the safety of an aircraft with which Michael Brassington is charged in Count Twenty-Three of the Superseding Indictment.  Id. at 8.    Additionally, the Government argues that the jet crash is relevant to proving the materiality elements in the conspiracy, with which all four Defendants are charged, and false statement charges, particularly as it relates to the allegedly fraudulent weight and balance graphs.  Id. at 8-9.  According to the Government, the materiality of the weight & balance fraud will be a contested issue at trial as at least one Defendant has already notified the Government of his intent to show the crash was caused by other factors. Id.  In relation to the weight & balance fraud, the Government also states that it will be calling former participants in the fraud to testify, and argues that the jet crash is essential to rebut potential arguments by Defendants that such conduct was harmless. Id. at 9.  The Government further argues the jet crash is relevant and necessary evidence relating to Counts Twenty-Four and Twenty-Seven, which charge Michael Brassington and John Kimberling, respectively, with false statements relating to the crash and ensuing investigation because without evidence of the jet crash, the ensuing investigation does not make sense. Id. at 10.  The Government also states that it will be offering

"physical items retrieved from the crash site [to] prove the conspiracy and other charges," and these items "bear unmistakable signs of the accident." Id. at 9.

With respect to Defendants' Rule 403 arguments, the Government argues evidence of the jet crash is overwhelmingly probative. Id. at 11. The Government also argues that the risk of unfair prejudice is slight because any prejudice would result "not from the fact of the crash itself, but from the cause of the crash," which as noted above is contested. Id. Finally, the Government argues that evidence of the jet crash is less inflammatory and prejudicial than prior bad act evidence held admissible after scrutiny under Rule 403 in other Third Circuit cases. Id.

In reply, McKenzie makes several arguments in support of his motion to preclude reference to the jet crash. Specifically, McKenzie argues that even if the Government demonstrated why evidence of the jet crash is admissible against his Co-Defendants, it has not shown how the jet crash evidence is admissible against McKenzie. Additionally, McKenzie argues that the false statement charges with which he is charged occurred prior to the jet crash, and that the materiality element of a false statement charge turns on whether the statement was capable of influencing the decision-making of the federal agency to which it is directed, in this case the FAA, not on whether it resulted in the crash.[17] McKenzie also argues, with regard to the physical items retrieved from the crash site, that the jury can be instructed not to speculate on the cause of the damage or the Government can use clean copies provided in discovery. McKenzie further asserts that he has never indicated to the Government that he intends to introduce an expert regarding the cause of the crash. Finally, McKenzie argues that being forced to sit through a six-week trial where evidence that would not be admissible against him

---

[17] McKenzie does not address the relevance of the jet crash to the materiality element of the conspiracy charge.

personally will be introduced is itself substantially prejudicial.

This Court finds the Government's arguments persuasive. The jet crash provides the contextual background for the entire investigation and the resulting charges in the Superseding Indictment. Although the Defendants are not charged for the jet crash itself, evidence of the jet crash is relevant to proving the offenses with which the Defendants are charged in the Superseding Indictment, namely conspiracy, false statements,[18] and endangering the safety of an aircraft. After balancing the probative force of the evidence with its likely prejudicial effect, this Court finds Defendants have not demonstrated that the probative value of evidence relating to the jet crash "is <u>substantially</u> <u>outweighed</u> by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403 (emphasis added). Defendants' motion is **denied**.

### J.    MOTION FOR PERMISSION TO USE JUROR QUESTIONNAIRE AND TO PARTICIPATE IN VOIR DIRE

Defendant Michael Brassington moves for permission to use a juror questionnaire and to participate in voir dire. The Court reserves the right to rule on these motions and will decide these matters on the record.

### K.    MOTION FOR PERMISSION TO USE ELECTRONIC EQUIPMENT

Defendants Michael Brassington and Paul Brassington move for permission to use electronic

---

[18]With regard to McKenzie's arguments specifically regarding the materiality element of the false statement, the Court notes that this is an issue for the trier of fact as "[u]nder section 1001 a false statement may be material even though the agency did not rely on it, and was not influenced by it. The government need only [prove] that the [false statement] submitted to [the federal agency] had the natural tendency or capability to influence a decision of the [federal agency]." <u>United States v. Ross</u>, 77 F.3d 1525, 1546 (7th Cir. 1996) (internal citations omitted).

equipment, including a laptop computer, in the courtroom.  Defendants' motions are **granted**.

### III.  <u>CONCLUSION</u>

For the aforementioned reasons, Defendants' motions are **denied in part** and **granted in part**.

An appropriate Order accompanies this Opinion.


   s/Dennis M. Cavanaugh      
Dennis M. Cavanaugh, U.S.D.J.


Dated:     October <u>8</u>, 2010
Original:   Clerk
cc:        All Counsel of Record
           File