UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASE NO.:  09-CR-00045-DMC


UNITED STATES OF AMERICA

vs.

MICHAEL BRASSINGTON,

      Defendant.

_____/

## DEFENDANT'S LEGAL AND FACTUAL OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

    The Defendant, Michael Brassington, by and through his undersigned counsel, hereby files his legal and factual objections to the Presentence Investigation Report as follows, prepared by Albert Flores, and in support thereof would show as follows:

### LEGAL OBJECTIONS

    1.    The Presentence Report includes a 22 level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(L) based on the allegation that the offense involved a loss of more than $20,000,000, but not more than $50,000,000.

    2.    The loss figure was calculated by the U.S. Probation Office as follows:

        a)    $3,593,473.20 – illicit income received by Platinum Jet during the pre-Darby phase.

        b)    $600,516.00 – revenue generated from illegal 135 flights in the post-Darby phase.

        c)    $200,000.00 – revenue from illegal weight and balance flights in the post-Darby phase.

        d)    $20,437,094.28 – insurance claims paid by Global Aerospace as a result of the February 2, 2005, crash.

        e)    $10,885,051.00 – insurance claims paid by the insurance company for A&E Stores.

        f)    $4,741,289.00 – unreimbursed loss and damages to A & E Stores.

    3.    The defense objects to the inclusion of the $3,593,473.20 alleged as a loss during the pre-Darby phase. The loss is calculated as the total income received by Platinum Jet during this time and fails to distinguish between income generated by the company for flights as compared to other income (services unrelated to any charged offense or flight), and, most importantly, fails to reduce any loss by the value of services rendered.

    The Presentence Investigation Report fails to, and claims the Defendant is not entitled to, reduce any loss amount by the value of services rendered pursuant to Application Note 3(F)(v), which states "[i]n a case involving a scheme in which services were fraudulently rendered to the victim by persons falsely posing as licensed professionals, ... loss shall include the amount paid for the ... services, ... with no credit provided for the value of those ... services."

    The Presentence Investigation Report fails to properly apply that application note to the facts of this case. The cases which apply that Application Note are cases in which a defendant claimed to be an attorney and had never attended law school, U.S. v. Kieffer, 621 F. 3d 825 (8th Cir. 2010); defendant pretended to be a doctor, U.S. . Curran, 525 F. 3d 74 (1st Cir. 2008); defendant pretended to be a health care provider, U.S. v. Ary-Berry, 2011 WL 1758738 (5th Cir. 2011); defendant pretended to be a dentist, U.S. v. Aronowitz, 151 Fed. Appx. 193 (3rd Cir. 2005); or defendant pretended to be a nurse, U.S. v . Hunter, 618 F. 3d 1062 (9th Cir. 2010).

2

Those cases and the Application Note does not apply to this case as the Defendant and others were licensed pilots and no one pretended to be a licensed professional.

    4.      Excluding Application Note 3(F)(v), the PSI calculations must credit the loss against the value of services provided pursuant to Section 2B 1.1.  Section 2B1.1., Application Note 3E, states:

> "[l]oss shall be reduced by the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected."

    5.      Any money paid by customers for flight services by Platinum Jet in the pre-Darby phase received exactly what they had negotiated for.  They each received flights to and/or from their required destinations.  Thus, any loss that can be determined in the pre-Darby phase must be offset by the exact amount of services received and any loss must be zero.  U.S. v. Anders, 333 Fed. Appx. 950 (6th Cir. 2009).

    6.      The defense objects to the inclusion of a $600,516.00 loss as revenue generated from illegal 135 flights in the post-Darby phase.

    7.      The Presentence Investigation Report again fails to offset, pursuant to 2B1.1. Application Note 3E, any revenue from the fair market value of services rendered.

    8.      As each passenger received the exact transportation negotiated for.  The loss amount from any illegal 135 Flight, post-Darby, must be zero.  Id.

    9.      The defense objects to the inclusion of $200,000.00 loss calculated as revenue generated from alleged illegal weight and balance flights in the post-Darby phase.

        Besides the fact that the Defendant was found not guilty of any illegal weight and balance flight, any revenue generated from the flights must be offset by the services provided

U.S.A. vs. Brassington
Case No. 09-CR-00045-DMC

pursuant to 2B1.1., Application Note 3E. As every passenger received exactly what they negotiated for, the loss must be zero. Id.

10.    The defense objects to the inclusion of any of the payments made by Global Aerospace Insurance, any other insurance company, or any unreimbursed monetary amount as a result of the February 2, 2005, accident. The defense has always maintained that the accident was a result of mechanical failure. The statements of the pilot, John Kimberling and the testimony of the co-pilot, Carlos Salaverria, are consistent with the fact that the plane suffered mechanical failure, as they both describe the yoke being frozen.[1]   The black box printout confirmed that the elevator was in fact frozen, a fact the Government's expert never addressed nor explained. A copy of the black box printout is attached hereto as Exhibit A.

It was testified at trial that at take off the temperature was below the freezing mark and that there was moisture (snow) on the ground. It was admitted by co-pilot, Carlos Salaverria, that the Challenger flight manual **required him to use the de-icing system, which was not activated.** Attached hereto as Exhibit B is that portion of Carlos Salaverria's testimony. If it is determined by the Court that the plane's failure to rotate was caused by the crew's failure to follow required protocol and not use the de-icing system[2], then the statement of Defendant, Michael Brassington, to Carlos Salaverria regarding the BOW of 370V is not the cause in fact or proximate cause of the accident. If there is no cause in fact or proximate cause between the Defendant's statement and the accident, no monetary loss as a result of the accident can be included and used to increase the base level offense. United States v. Spinney, 795 F. 2d 1410 (9th Cir. 1986).

---

[1]   Which would not have occurred if the plane failed to rotate because of a forward center of gravity issue.
[2]   Which certainly explains and is consistent with the black box printout and the testimony of Carlos Salaverria and statement of John Kimberling.

In order for the offense level to be increased based on an increased loss amount, it must be established that the Defendant's conduct was the legal or proximate cause of the resulting loss. A basic tenet of criminal law is that the Government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury. Id. Causation in criminal law has two requirements: Cause in fact and proximate cause. W. LaFave and A. Scott, Criminal Lam § 35 (1972); C. Torcia, Wharton's Criminal Law § 26 (14th Ed. 1978); R. Perkins & R. Boyce, Criminal Law 774 (3d Ed. 1982). Cause in fact, or what is commonly known as "but for" causation, is always a necessary condition of causation, but is insufficient in itself. U.S. v. Rothwell, 387 F. 3d 579 (9th Cir. 2004). *See also* U.S. v. Marlatt, 24 F. 3d 1005 (7th Cir. 2004). The second question and usually the ultimate one is whether the cause in fact is legally sufficient (proximate cause) "to warrant imposing liability upon the actor." Rothwell at 583, citing Farwell v. Un, 902 F. 2d 282 (4th Cir. 1990).

The defense would submit that the facts as presented at trial, the crew's failure to de-ice and resulting mechanical failure, fails to establish a cause in fact and/or proximate cause between Michael Brassington's statement to Carlos Salaverria regarding the BOW of 370V and the resulting February 2, 2005, accident. Accordingly, no increase in the base level offense can be included as a result of insurance payments or damages from the accident.

Even if the Court were to determine that mechanical failure was not the cause of the plane's failure to rotate and that it was a center of gravity problem, the defense maintains the same position, that there is still no cause in fact or proximate cause between the Defendant's statement and the plane's failure to rotate. That position is maintained because under the best case scenario for the Government, Michael Brassington told Carlos Salaverria that the plane's BOW was 700-1000 pounds lighter than it was. That statement could cause and reasonably

expect one to increase fuel upward by 700-1000 pounds, while still remaining inside the envelope. That did not happen. The plane, for whatever reason, was over fueled in excess of 3,000 pounds,[3] when one starts from the lower BOW and C.G. point. A copy of the Graph calculated by the FAA is attached hereto as Exhibit C. A copy of the same Graph, starting at the lower BOW and C.G., is attached hereto as Exhibit D. That act, the act of over fueling the plane to that level, by pilot, John Kimberling, and co-pilot, Carlos Salaverria, was an intervening cause. An intervening cause is an unforeseeable act of a third party. Touche Ross & Co. v. Commercial Union Ins. Co., 514 So. 2d 314 (Miss. 1987). See also Restatement (Second) of Torts, § 448.

An intervening cause breaks the chain between one's conduct and the resulting injury. U.S. v. BP Products North America, Inc., 610 F. Supp. 2d 655 (S.D. Tex., 2009). Stated differently, the proximate cause between the conduct and injury is eliminated. With no proximate cause between the Defendant's statement and the plane's failure to rotate, there can be no increase in the offense level based on insurance payments or losses resulting from the accident. United States v. Rutkoske, 506 F. 3d 170 (2nd Cir. 2007); United States v. Olis, 429 F. 3d 540 (5th Cir. 2005). Losses from causes other than the criminal conduct must be excluded from the loss calculation Id. (quoting United States v. Ebbers, 458 F. 3d 110 (2d Cir. 2006). It cannot be said that the crew's loading of that much fuel, disregarding passengers and other factors, was a foreseeable event. Defendant, Michael Brassington, never told co-pilot, Carlos Salaverria, how much fuel to upload. Michal Brassington never instructed co-pilot, Carlos Salaverria, to load max fuel. Michael Brassington never instructed Carlos Salaverria to load full

---

[3]  The plane would have been over fueled some 3,300 pounds, when starting from the preprinted BOW.

fuel. Michael Brassington never instructed Carlos Salaverria to be outside the envelope. A copy of Carlos Salaverria's testimony as to each of the above is attached hereto as <u>Exhibit E</u>.

The fact that the Defendant was found guilty of endangering an aircraft is not conclusive that the accident was the legal or proximate cause of his conduct. It was argued by the Government that even if there was no crash, the Defendant was still guilty of endangering an aircraft. The Government argued that it was Michael Brassington's statement regarding the weight and balance of the aircraft (370V) to co-pilot, Carlos Salaverria, in and of itself, that made him guilty of endangering the aircraft. That argument allowed the jury to reach a verdict that the Defendant was guilty of endangering an aircraft, simultaneously while concluding that the crash was a result of a mechanical failure.

Though a sentencing Court need only make a reasonable estimate of the loss to enhance the offense level under 2B1.1, that determination is only after it is concluded that cause in fact and proximate cause exists between the loss and the Defendant's conduct. <u>United States v. Parish</u>, 565 F. 3d 528 (8th Cir. 2009). That factual determination has not been made in this case. The defense would maintain that the jury actually concluded otherwise as a result of their finding the Defendant not guilty of each of the 15 falsified weight and balance charges.

Accordingly, the Defendant objects to the inclusion of any loss based on the accident of February 2, 2005, which, according to the PSI, includes insurance company payouts and unreimbursed damage as a result of the accident.

11. The defense objects to the inclusion of a 6 level increase for having more than 750 victims. A victim is defined under the application notes definitions as (A) any person who sustained any part of the actual loss determined under subsection (b)(1) or (B) any individual who sustained bodily injury as a result of the offense.

7

Not all passengers are victims. No passenger, apart and from the accident flight, suffered any economic loss, based on credit for fair market value of the services rendered, or suffered any physical harm, as they all reached their destinations safely. None of those passengers can be considered victims. Just as the loss is reduced by the fair market value of services rendered, the passengers who suffered no economic or physical harm must be eliminated from the category of "victim." U.S. v. Yagar, 404 F.3d 967 (6th Cir. 2005). See, e.g. U.S. v. Lewis, 88 Fed. Appx. 898 (6th Cir. 2004) (concluding that evidence was not sufficient to support an enhancement based on the number of victims where the court has "no way of knowing" whether the alleged victims actually suffered pecuniary harm.) Any Platinum Jet passenger who arrived at their destination suffered no pecuniary or physical harm and should not be counted as a victim.

Because it has not been determined that any legal causation exists between the Defendant's conduct and the accident flight, the defense would object to the inclusion of any of those passengers or crew members as "victims." Accordingly, there should be no offense level increase for additional victims.

12.     The PSI has a 2 level increase pursuant to U.S.S.G. 3B1.3 for abuse of a position of public trust. The Defendant had no special, close or personal attachment or fiduciary relationship with any passenger or person the Government claims is a victim. Ordinary commercial relationships do not justify the abuse of trust enhancement. "A position of trust must involve more than a contractual or arm's length commercial relationship." U.S. v. Dinnall, 313 Fed. Appx. 241 (11th Cir. 2009). A contractual relationship was all that existed between Platinum Jet and their customers. As it relates to the conspiracy count in which the defendant was found to have defrauded the FAA: No position of trust exists or existed between Platinum

8

Jet or Michael Brassington and the FAA to justify an abuse of public or private trust. Accordingly, the defense objects to the inclusion of a 2 level offense enhancement for abuse of a public or private trust.

13.     The PSI also includes a 2 level increase pursuant to U.S.S.G. 3C1, 1(A) for obstructive behavior based on the accident report filled out by the Defendant and him checking the box that the flight was a Part 91 flight.

Application Note 4(G) defines what type of conduct is included and states, "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instance offense." The 2 level increase is improper where a defendant's conduct does not significantly impede the investigation. U.S. v. Morales, 609 F.3d 637 (5th Cir. 2010).

The defense maintains that the 2 level increase is inappropriate in light of the Defendant telling investigators that the accident flight was supposed to be a part 135 flight prior to the accident report being filled out. It cannot be said that the box checked on the accident report significantly obstructed or impeded the official investigation, in light of the fact that the investigators were previously informed about the type of flight.

## FACTUAL OBJECTIONS

14.     Paragraph 35 of the Presentence Report states "it was further determined that Platinum Jet had over-fueled, or "tankered, its aircraft with cheap fuel and falsified FAA – required weight and balance graphs to hide the resulting dangerous configurations on commercial flights." The defense objects to the above language as the Defendant was found not guilty of making false statements on any of the weight and balance graphs. It was evident from the testimony of Noel Blevins and the Notice of Intent to Add Aircraft form that the August 20,

2002, 60S weighing document was placed into N370V. Noel Blevins testified at trial that he realized a mistake had been made and only recently realized it.

15.     The Defense objects to paragraph 36 which states "they started to contend the jet N370V had been refurbished and re-weighed since the date evidenced on the most recent weight and balance report stored in the aircraft and that jet 370V's Basic Operating Weight was in fact approximately 24,700 pounds as shown on the fraudulently altered weight and balance graphs, instead of the 25, 650 pounds shown on the report in the aircraft." Noel Blevins is the one who filled out the Notice of Intent to Add Aircraft paperwork. After conducting his investigation and inspection of the plane and all documents contained within, he listed the last weighing of N370V as having taken place on August 20, 2002.[4] The weight of the plane during that weighing was 24,734 pounds. If Noel Blevins was mistaken when filling out the FAA required documents and the FAA approved the plane (370V) on the mistaken information, it is certainly conceivable that Platinum Jet, their management, and pilots were equally mistaken. Clearly, the jury believed that it was a mistake and that no false statements were made as they found the Defendant not guilty of making false statements as it relates to all the weight and balance charges. A copy of the Notice of Intent to Add Aircraft and the 60S weight and balance report of August 20, 2002, is attached hereto as Exhibit F.

16.     The Defense objects to paragraphs 59-70 and 83 which include language and makes reference to a "tankering" scheme. This alleged "tankering" scheme was the story as created by the government during trial to explain or justify the allegation of the changed Basic Operating Weight, as compared to admitting an honest error or mistake. The "tankering" scheme as alleged by the Government was not proven. To the contrary, it was shown at trial to have no

---

[4]   Refer to page 3-1, Section 3.1.5.

economic validity, as it would save one hundred and sixty dollars on flights traveling from a place like Teterboro where Platinum Jet did have a reduced fuel price contract. The problem was that the reduced Basic Operating Weight was even recorded on flights traveling to Teterboro. Why would Platinum Jet want to reduce the Basic Operating Weight and carry more fuel to a location where they had a reduced fuel price contract?

17.     The Defense objects to the language in paragraph 72 which refers to a "phantom" weight and balance report. Although, 370V was never reweighed after September 2, 2001, it is clear that a weight and balance report which was believed to be a more current weight and balance report was in the plane. This is established from the date filled in by Noel Blevins on the Notice of Intent to Add Aircraft and the August 20, 2002, weight and balance report of 60S which does not list a specific plane or serial number. Those items establish that it was the August 20, 2002, weight and balance report for 60S that led people to believe that 370V was reweighed and had a lighter Basic Operating Weight. A copy of the February 23, 2005, letter documenting that everybody thought 370V was reweighed August 20, 2002, is attached hereto as Exhibit G. The fact that N60S was reweighed one year earlier than necessary supports this mistake.[5]

18.     The Defense objects to the factual statement in paragraph 20 that Michael Brassington oversaw all flight operations and that he was primarily responsible both for maintaining accurate records  required by the Federal Aviation Administration ("FAA") on behalf of Platinum Jet Charter flights.

_____

[5]  60S was reweighed in October of 2004, only 26 months after being weighed on August 20, 2002. If Platinum Jet were trying to save money and delay weighing planes, why would they take 60S out of service, pay to have it reweighed in 2004 when it was weighed just 26 months prior? Could it be that they never knew it was weighed in August, 2002, because that paperwork ended up in the wrong plane? A copy of the October 15, 2004, Weight and Balance Report for 60S is attached hereto as Exhibit H.

11

Pursuant to the FAR (Part 135), Darby Aviation as the Certificate holder of the Part 135 certificate, was the party responsible for maintaining accurate records required by the FAA. Additionally, Darby Aviation was the party that hired and trained pilots. For any Part 91 flight, it was the pilot in command (FAR 91.3) that is responsible for all aspects of that flight, including paperwork required by the FAA.

19.     The Defense objects to the factual statement that the Defendant and others tried and failed to get jet N60S on to two different part 135 charter certificates.

The second charter company, Millionair, was rejected by Platinum Jet based on the requested fees to piggyback on their certificate. It had nothing to do with Platinum Jet failing.

20.     The Defense objects to paragraph 60 which states "Jet fuel is by far the biggest expense of a charter operation, and Michael Brassington's money-saving policy went to the extreme of requiring full fuel tanks even if that excess fuel cause the aircrafts to exceed their maximum forward COG limits."

Jet fuel is not by far the biggest expense of a charter operation. The purchase or lease of the aircraft and the cost of the maintenance of the planes are the largest expense. Additionally, there was much testimony that what was said was max fuel and not full fuel and the significant technical difference between the two statements. Take the crash flight as an example, the testimony was extremely clear that Michael Brassington had nothing to do with determining or instructing the pilot or co-pilot as to how much fuel should be uploaded onto the aircraft. Those decisions were and always were the pilot in command's responsibility.

21.     The defense objects to paragraph 70 which states "Carlos Salaverria took Michael Brassington at his word and flew jet 370V on several occasions believing it weighed

12

substantially less than it did.  This pattern of dangerous flying ultimately resulted in the crash at Teterboro Airport on February 2, 2005."

There was no finding of fact by the Jury that the crash was a result of the statement of Michael Brassington to Carlos Salaverria, regarding the Basic Operating Weight of N370V.  There was an equal amount of credible testimony and evidence that the plane failed to rotate due to mechanical failure.  Besides the physical evidence of the black box printout showing the elevators inability to move during takeoff. The testimony and statement of both the pilot, John Kimberling, and co-pilot Carlos Salaverria, that the yoke was frozen, is proof of mechanical failure.

22.     The Defense objects to paragraph 71 which states that Michael Brassington tried to cover up the fact that the crash flight was a part 135 flight when it was flown as a part 91, by the way of the accident report was filled out by Michael Brassington.

The Defense maintains that it is impossible to cover something up when one admits the truth about the disputed fact.  It is undisputed that days before the accident report was filed or filled out by Michael Brassington he informed all governmental agencies present that the flight was a part 135 flight.

23.     The Defense would object to paragraph 76 which states that Michael Brassington made misrepresentations to the insurance companies.

Michael Brassington told the insurance company that they were going to conduct part 91 and 135 flights and gave proposed percentages of the flights.  Michael Brassington was never asked for a copy of a 135 certificate nor did he ever produce a fraudulent one.  There were no misrepresentations by Michael Brassington to any insurance company.

13

U.S.A. vs. Brassington
Case No. 09-CR-00045-DMC

24.     The Defense objects to paragraph 79 which states Michael Brassington was involved in the dispatching of ill-qualified or unrested pilots.

There was no testimony or evidence that Michael Brassington ever dispatched any pilot, ill-qualified or unrested to any flight.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, via by electronic transmission via CM/ECF, to SCOTT MCBRIDE, Assistant United States Attorney, Office of the United States Attorney, 970 Broad Street, Suite 700, Newark, New Jersey 07101, this 29th day of June, 2011.

Respectfully submitted:

LAW OFFICES OF SALNICK, FUCHS & BERTISCH, P.A.
One Clearlake Centre, Suite 1203
250 South Australian Avenue
West Palm Beach, Florida 33401
Telephone: (561) 471-1000
Facsimile: (561) 659-0793


/s/ Michael Salnick
MICHAEL SALNICK, Fla. Bar #270962
New York Bar # 2007045


Attachments

14

**Exhibit A**



CL600, N370V

PRELIMINARY DATA: 10sec.plt
Revised: February 10, 2005

National Transportation Safety Board

**Exhibit B**

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW JERSEY

3

4   UNITED STATES OF AMERICA     :    Criminal No.
                                       09-cr-45-DMC-1,2, & 5

5                v.          :
                                    TRANSCRIPT OF

6   MICHAEL BRASSINGTON,        :    TRIAL TESTIMONY OF
   PAUL BRASSINGTON, and            CARLOS SALAVERRIA

7   BRIEN McKENZIE,             :
                                       VOLUME 2

8              Defendants.    :
   ------------------------------x

9

10                                  Newark, New Jersey
                                 November 1, 2010

11

12

13

14   BEFORE:

15        THE HON. DENNIS M. CAVANAUGH, U.S.D.J.

16

17

18                                Reported by
                               CHARLES P. McGUIRE, C.S.R.
                               Official Court Reporter

19

20

21        Pursuant to Section 753, Title 28, United States
       Code, the following transcript is certified to be

22        an accurate record as taken stenographically in
       the above entitled proceedings.

23

24                         s/CHARLES P. McGUIRE, C.S.R.

25

1    A.    They were going to get late -- they were going to be

2    late.   They weren't able to do the next trip.

3    Q.    Is that the basis of your understanding as to why

4    there was a duty rest issue?

5    A.    Yes.

6            MR. McBRIDE:   That's all I have, Your Honor.

7            THE COURT:   Mr. Salnick?

8                    RECROSS EXAMINATION

9    BY MR. SALNICK:

10   Q.    I just want to ask you one thing that was touched on.

11           MR. SALNICK:   Judge, I'm asking a little latitude

12   for this.   This is --

13           THE COURT:   The word there is "little."

14           (Laughter)

15           MR. SALNICK:   Little, with a capital L.

16   Q.    You said that you never used the de-icing on the

17   plane; is that correct?

18   A.    Yes.

19   Q.    Or the wings?

20   A.    Yes.

21   Q.    Or the engines; is that correct?

22   A.    Yes.

23   Q.    And there was snow on the ground that day; correct?

24   A.    Not too much.

25   Q.    Not too much, but there was snow, wasn't there?

1    A.    Yes.

2    Q.    And the temperature that day was minus eight Celsius,

3    wasn't it?

4    A.    Yes.

5    Q.    And are you aware that according to the Challenger

6    manager that a pilot has to use de-icing if there is snow on

7    the ground and the temperature is below five degrees

8    Celsius?

9    A.    Yes.

10   Q.    But you didn't use it.

11   A.    No.

12   Q.    Okay.

13   A.    There was no -- no, we didn't use it.

14          MR. SALNICK:  All right.  Thank you, sir.

15          THE COURT:  Mr. Reinhart?

16          MR. REINHART:  Yes, Your Honor.

17                    RECROSS EXAMINATION

18   BY MR. REINHART:

19   Q.    Mr. Salaverria, you were asked in the grand jury about

20   the crash flight, quote, question by Mr. McBride:

21          "And this was classified as a Part 91 flight."

22          And you answered "Yes."

23          Do you remember that?

24   A.    What did you say?

25   Q.    You didn't remember being asked in the grand jury by

**Exhibit C**

ATTN: KEN SYMONS

P.01



Bow 25647.15

**Exhibit D**

ATTN. KEN SYMONS

End weight ↗
& C.G. starting
at Adjusted
BOW.



BOW 25647.15

**Exhibit E**

1

 1          IN THE UNITED STATES DISTRICT COURT

 2          FOR THE DISTRICT OF NEW JERSEY

 3

 4   UNITED STATES OF AMERICA      :   Criminal No.
                                       09-cr-45-DMC-1,2, & 5
 5              v.                 :
                                       TRANSCRIPT OF
 6   MICHAEL BRASSINGTON,          :   TRIAL TESTIMONY OF
     PAUL BRASSINGTON, and             CARLOS SALAVERRIA
 7   BRIEN McKENZIE,               :
                                       VOLUME 2
 8              Defendants.        :
     ----------------------------x
 9

10                                     Newark, New Jersey
                                       November 1, 2010
11

12

13

14   BEFORE:

15        THE HON. DENNIS M. CAVANAUGH, U.S.D.J.

16

17
                                  Reported by
18                                CHARLES P. McGUIRE, C.S.R.
                                  Official Court Reporter
19

20

21        Pursuant to Section 753, Title 28, United States
          Code, the following transcript is certified to be
22        an accurate record as taken stenographically in
          the above entitled proceedings.
23

24                                s/CHARLES P. McGUIRE, C.S.R.

25

CHARLES P. McGUIRE, C.S.R.

1    with a crime, are you?

2    A.    No.

3    Q.    And for all those times that you say you flew with bad

4    information to the FAA, you're not being charged with a

5    crime, are you?

6    A.    No.

7              MR. SALNICK:  Can I have a moment, please, Judge?

8              THE COURT:  Yes.

9    Q.    Just a couple other things.

10             You said that in November of 2004, I think you

11   indicated that Michael Brassington said that the weight was

12   twenty-four-seven; is that correct?

13   A.    Correct.

14   Q.    And on the flight that had the accident, however, you

15   used 25,000 as your basic operating weight, didn't you?

16   A.    Yes.

17   Q.    And Mr. Brassington never told you to load max fuel,

18   did he?

19   A.    That what?

20   Q.    Mr. Brassington never told you to load the maximum

21   amount of fuel, did he?  Michael Brassington.

22   A.    No.

23   Q.    And Michael Brassington never told you to load what

24   they sometimes referred to as full fuel; he had nothing to

25   do with it, did he?

59

1    A.    No.

2    Q.    And Mr. Brassington never told you to go outside the

3    envelope, did he?

4    A.    No.

5    Q.    Whatever you did was based upon that day what John

6    Kimberling told you; correct?

7    A.    Yes.

8    Q.    Now, and that's where you loaded the thirteen-nine of

9    fuel; is that right?

10   A.    That's right.

11   Q.    Now, you had had already 1,800 pounds of fuel on board

12   when you arrived; is that correct?

13   A.    That's correct.

14   Q.    Now, in your deposition, I think you said you had

15   1,500 pounds of fuel; is that correct?

16   A.    Yes.

17   Q.    Okay.  You remember that?

18   A.    I remember that.

19   Q.    Are you indicating that you were mistaken in your

20   deposition?

21   A.    Yes.

22   Q.    And then today, you said that after fueling, the total

23   was fourteen-two.

24   A.    That's correct.

25   Q.    Is that right?

**Exhibit F**

NOTE: These forms are designed for on-screen fill-in. To navigate through the forms use TAB (down) and Shift-Tab (up). Use the page up/down and the mouse to skip large areas.

# SECTION 1 NOTICE OF INTENT TO ADD AN AIRCRAFT

☐ Check if this is an UPDATE/REVISION

**1.1 OPERATOR AND AIRCRAFT INFORMATION**

| | | | |
|---|---|---|---|
| Operator Name: AlphaJet International | | | Certificate Number: YDBA |
| [illegible] | [illegible] | [illegible] | [illegible] |
| Challenger | CL 600-1A11 | 1014 | N 370 V |

| [illegible] | | | | |
|---|---|---|---|---|
| 6487 Hrs 4010 cycles | 5123 Hrs | 3480 Hrs | Hrs | Hrs |

| | |
|---|---|
| Registered Owner (see NOTE below) | 448 Alliance Corp. |
| Address | 30 on The Green<br>Dover DE 19901 |
| City | State | ZIP - |

NOTE: If the aircraft owner's registered name is not exactly the same as the certificate holder's legal name the applicant must show how she or he will control the operation and maintenance of the aircraft. Show this by providing a copy of a lease or other agreement.

**1.2 DOCUMENTS REQUIRED AT SUBMISSION OF THIS NOTICE**

See Section 2 for indications of the need for new or revised Procedures Manuals and Training Programs

| Document Included | Not Applicable | Document Included | Not Applicable |
|---|---|---|---|
| ☒ Minimum Equipment List/revision | ☐ | ☐ Approved Aircraft Inspection Program (Turbine Powered Aircraft) | ☐ |
| ☒ Maintenance Program/Revision | ☐ | Other (list) | ☐ |
| ☐ Copy of aircraft lease, letter of intent, or other agreement (see NOTE above) | ☐ | ☒ Continuous Airworthiness Maintenance Program (Required for Ten-or-More PAX optional for other operations) | ☐ |
| ☐ Operations Manual/Revisions | ☐ | ☐ Approved Icing Procedures/revision | ☐ |

**1.3 SCHEDULE OF EVENTS**

If an event or item is applicable please enter your estimated date otherwise leave blank.

| PHASE 3 DOCUMENT COMPLIANCE EVENT | [illegible] | PHASE 4 DEMONSTRATION & INSPECTION [illegible] EVENT | [illegible] |
|---|---|---|---|
| Deviation Request (For Proving Test flights) | | Pilot training | |
| Pilot Training Program/revision | | Maintenance training | |
| Maintenance Training Program | | FAA Conformity Inspection | |
| Proving Test or Validation Plan | | Proving Test Flights | |
| Final Compliance Statement | | Proficiency/Flight Checks | |
| Insurance Registration with AFS-260, using OST Forms 4507 and 6410 (see cover letter)<br>NOTE: After initial certification, the date may may be up to 30 days after adding an additional aircraft | | Validation Test Flights | |
| PHASE 5 FAA CERTIFICATION and/or OPS SPECS | | PROPOSED COMPLETION DATE | |

**1.4 CONTACT INFORMATION**

| | NAME | Phone & EMAIL ADDRESS | |
|---|---|---|---|
| Director of Maintenance | Noel Allen Blevins | Phone: | (256)-389-3241 |
| | | EMAIL: | noel@alphajet.com |
| | | FAX | (256)-389-3249 |
| Director of Operations | John Morrison | Phone: | (256)- 389 3241 |
| | | EMAIL: | jcts@alphajet.c[illegible] |
| | | FAX | (256)- 389 3249 |

Submitted by (signature): [signature] Title: DOM Date: 5/5/0

c:\docume~1\aso209mg\locals~1\temp\c.lotus.notes.data\~6117364.doc

# SECTION 2   REQUEST FOR OPERATIONS SPECIFICATIONS FOR THIS AIRCRAFT

| 2.1 INTENDED KINDS OF OPERATIONS: | Cargo Only (Never Passengers) | Maximum Passenger Seating Capacity | Day Only | Day/Night |
|---|---|---|---|---|
| | ☑ YES ☐ NO | 12 | ☑ YES ☐ NO | ☑ YES ☐ NO |

**INSTRUCTIONS**

1. If you want an operation described below, check the box to the left of the description.

2. Then, look to see if a "✓" appears to the right of the operation under "Procedures" and/or "Training/skill" and revise your operating procedures and training manual and prepare a new proficiency as indicated. The FSDO can provide any guidance you request.

☒

| | | | | | | Documents Requirements | Procedures | Training/skill |
|---|---|---|---|---|---|---|---|---|

| 2.2.1 | | PART A GENERAL | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **2.2 AIRCRAFT OPERATIONS** | **CREW** | ☐ | Conduct certain FAR 135 operations in accordance with flight and rest time limitations under 14 CFR Sections 135.261 through 135.273. | | | | | A023 |
| | | ☒ | Make arrangements with training centers and other organizations for certificate holder training in accordance with 14 CFR Section 135.324. If applicable, provide the FAR 142 Training Center information below or attach a list with the indicated information. | | | | | A031 |
| | | | **Name** | **Certificate number** | **Address** | **Course name(s)** | | |
| | | | Flight Safety Intl. | F90V39RK9555 | Ryan Ave Doral RC HIP-162 | CL 600 | | |
| | | | SimuFlite | YFYX 291K | 2929 W. Airfield Dr DFW Airport TX 75261 | | | |
| | | ☐ | Use an approved computer-based flight Crew recordkeeping system for FAR 135 operations | | | | | A025 |
| | | ☐ | Use an autopilot in lieu of a second-in-command. Provide the following Autopilot Make/Model _____/_____, Date Installed _____. | | | | | A01 |
| | | ☐ | Please furnish a copy (cover page only) of the Flight Manual Supplement that identifies the aircraft and the autopilot. | | | | | |
| | | ☐ | Unless the autopilot is aircraft manufacturer installed, please furnish a copy of the FAA Form 337 showing the installation data. | | | | | |
| | **ICING** | ☐ | Conduct a pretakeoff contamination check during ground icing conditions for Part 135 Operators. | | | | ✓✓ | A04 |
| | | ☐ | Conduct Part 135 airplane operations without a deicing/anti-icing procedure. | | | | ✓✓ | A00 |
| | | ☒ | Determine ground icing conditions for the purpose of flight [using an approved deicing/anti-icing procedure IAW CFR Section 135.227(b)(3)]. | | | | ✓✓ | A02 |
| | **SPECIAL OPERATIONS** | ☒ | Conduct airplane air ambulance operations Part 135. | | | | ✓✓ | A02 |
| | | ☐ | Conduct Land and Hold Short Operations (LAHSO) at designated airports and specified runway configurations as identified by Air Traffic Services in Notice 7110.11B, Appendix 1. | | | | ✓✓ | A02 |
| | | ☐ | Conduct Single Engine IFR (SEIFR) Passenger-Carrying Operations Under CFR Part 135. | | | | ✓✓ | A04 |
| | | ☒ | Conduct special en route IFR operations in Class G airspace. | | | | ✓✓ | A01 |

## SECTION 2 REQUEST FOR OPERATIONS SPECIFICATIONS FOR THIS AIRCRAFT (continued)

| | | INSTRUCTIONS 1. If you want an operation described below, check the box to the left of the description. 2. Then, look to see if an "X" appears to the right of the operation under "Procedures" and/or "Training/Skill" and revise your operating procedures and training manual and prepare to show proficiency as indicated. This is so you will provide any guidance you request. | Document Requirements | Procedures | Training/Skill |
|---|---|---|---|---|---|
| | 2.2.2 | **PART B ENROUTE** | | | |
| | | ☒ IFR en route operations. | | | ☒ B05 |
| **2.2 AIRCRAFT OPERATIONS** continued | Class I Navigation | ☒ Using an area navigation system certified under one or more of the following Advisory Circulars: AC 90-45A, 20-101C, 20-121A, 20-130A, 20-138. | | | ☒ B03 |
| | | ☒ In the U.S. Class A airspace using an area or long-range navigation system. | | ✓ | B03 |
| | Class II Navigation | ☒ Conduct using (dual) long-range navigation systems. | **Complete Section 3.2.1 AREA or Long Range NAV Systems: For these Operations Specifications** | ✓ ✓ | B03 |
| | | ☒ Conduct operations in Central East Pacific (CEP) airspace. | | ✓ ✓ | B03 |
| | | ☒ Conduct operations in North Pacific (NOPAC) airspace. | | | B05 |
| | | ☒ Conduct operations in North Atlantic minimum navigation performance specifications (NAT/MNPS) airspace. | | | B05 |
| | | ☒ Conduct operations in areas of magnetic unreliability. | | | B05 |
| | | ☐ Conduct operations using single long-range navigation system (S-LRNS). | | | B05 |
| | | ☐ Conduct extended overwater operations using a single long-range communication system (S-LRCS). | | | B04 |
| | | Complete Section 3.2.2 Long-Range Communications System(s) (LRCS) For these Operations Specifications | | | |
| | **RVSM** | ☒ Conduct operations in reduced vertical separation minimum (RVSM) airspace. | | | B04 |

| | | | | |
|---|---|---|---|---|
| | **Operations Outside the Contiguous United States.** (If yes, please list each country and oceanic area of operation) | Yes ☒ | No ☐ | B050 |
| **2.3 AREAS OF OPERATION** | Enter "No change to B50" if appropriate | | | |

... The term "FAR" in this document meant "14 CFR Part"

c:\docume~1\aso209mg\locals~1\temp\c.lotus.notes.data\~3117364.d...

## SECTION 2   REQUEST FOR OPERATIONS SPECIFICATIONS
## FOR THIS AIRCRAFT (continued)

| | | INSTRUCTIONS 1. If you want an operation described below, check the box to the left of its description. 2. Then, look to see if 3. ✓ appears to the right of the operation under "Procedures" and/or "Training/Skill" and review your operating procedures and training manual and prepare to show proficiency. An indicated, the FSDO will provide any guidance you request. | Document Requirement | Procedures | Training/ skill | OPS Ref |
|---|---|---|---|---|---|---|
| 2.4 PART C TERMINAL AREA OPERATIONS | | ☒ Conduct terminal instrument operations using specific procedures and landing minima for airplanes. | | | ✓ | C05 |
| | | ☒ Conduct Basic Instrument Approach procedure authorizations – all airports | | | ✓ | C05 |
| | | ☐ Conduct straight-in Category I approach procedures other than ILS, MLS, or GPS with specific IFR landing minimums for airplanes at all airports. | | | ✓ | C05 |
| | | ☐ Conduct IFR approach procedures using special IFR landing minimums for airplanes. | | | ✓ | C05 |
| | | ☒ Use IFR Takeoff Minimums, FAR 135 Airplane Operations - All Airports. | | | | C05 |
| | | ☐ Conduct foreign terminal instrument procedures with special restrictions for airplanes. | | | ✓ | C05 |
| | RNAV | ☐ Conduct airplane operations using published RNAV (VOR/DME) instrument approach procedures with an area navigation system. **Complete Section 3.2.1 AREA or Long Range NAV Systems: For these Operations Specifications** | | | ✓ | C05 |
| | | ☐ Conduct nonscheduled passenger and/or all-cargo, special terminal area IFR airplane operations in Class G airspace and at airports without an operating control tower. | | | ✓ | C06 |
| | | ☐ Use powerplant reversing systems for rearward taxi in specific airplane operations. | | ✓ | ✓ | C06 |
| | | ☐ Conduct turbojet airplane operations with tailwind components in excess of 10 knots but not to exceed 15 knots. | | | ✓ | C06 |
| | | ☒ Conduct turbojet airplane takeoff operations with tailwind components of 10 knots or less. | | | ✓ | C06 |
| | | ☐ Engage the autopilot after takeoff and initial climb at an altitude lower than specified for en route operations by Title 14 CFR Section 135.93 (a). | | | | C06 |
| | | ☐ Conduct engine-out departure procedures with approved 10-minute takeoff thrust time limits. | | | | C06 |
| | VNAV | ☐ Conduct IFR airplane approach procedures using vertical navigation (VNAV) utilizing a published MDA as a DA(H). **Complete Section 3.2.1 AREA or Long Range NAV Systems: For these Operations Specifications** | | ✓ | ✓ | C06 |
| | | ☒ Conduct airplane Category I, ILS, MLS, or GLS approach procedures with specific IFR landing minimums. | | | ✓ | C06 |
| | | ☒ Conduct airplane circle-to-land approach maneuvers using IFR Category I landing minimums. | | ✓ | ✓ | C06 |
| | | ☒ Conduct airplane contact approaches using IFR Category I landing minimums. | | ✓ | ✓ | C06 |
| | | ☒ Conduct certain Part 135 turbojet operations in the terminal area using visual flight rules. | | ✓ | | C06 |
| | | ☒ Conduct takeoffs in weather minimums below Category I takeoff minimums for FAR 135 airplane operations. | | ✓ | ✓ | C06 |

c:\docume~1\aso209mg\locals~1\temp\c.lotus.notes.data\~8117364.d(

"FAR" in this document means "14 CFR Part"

## SECTION 2  REQUEST FOR OPERATIONS SPECIFICATIONS FOR THIS AIRCRAFT (continued)

| | INSTRUCTIONS: | | | Document Requirements | Procedures training kit |
|---|---|---|---|---|---|
| | 1. If you want an operation described below, check the box to the left of the description. | | | | OPSS Ref Par |
| | 2. Then, look to see if any Appendix to this right of the operation outlines "Procedures" and/or "training" kit and review your operating procedures and training manual and prepare to show your competency as indicated. The FSDO will provide any guidance you request. | | | ✓ | ✓ |
| 2.8 PART D MAINTENANCE PROGRAM | | ☒ Conduct continuous airworthiness maintenance programs. (CAMP) (required for 10-or-more operators, optional for all others). | | ✓ | ✓ | D072 |
| | CAMP 135.411(a)(2) and 135.423 | ☐ Use the provisions of contractual agreements limited to specific maintenance functions. | | ✓ | | D073 |
| | | ☐ Conduct ferry flights under special flight permits with continuing authorization. | | ✓ | ✓ | D084 |
| | | ☒ Use maintenance time limitations for operators without a reliability program. | | ✓ | | D088 |
| | AAIP ~~134.419~~ | ☐ Use an approved aircraft inspection program (AAIP), (required for Turbine powered multi-engine aircraft, optional for others) | | ✓ | ✓ | D075 |
| | RVSM | ☐ Use an approved maintenance program for listed airplanes used in operations in designated RVSM airspace. | | ✓ | ✓ | D092 |
| | ~~MEL~~ 135.179 | ☒ Use an approved minimum equipment list (MEL). Inoperable instruments and equipment: | | ✓ | ✓ | D095 |
| | NINE OR LESS PAX SEATS 135.411(a)(1) | ☐ Annual & 100 Hour Inspections FAR Parts 91.409(a) & (b) | ☐ Additional maintenance requirements of 14 CFR Section 135.421 applicable for aircraft engine, propeller, and propeller control (governor). | | | D100 |
| | | ☐ Progressive Inspections FAR Part 91.409(d) | ☐ Additional maintenance requirements of 14 CFR Section 135.421 applicable for single engine IFR. | ✓ | ✓ | D10 |
| | | ☐ Manufacturers Program FAR 91.409 (f3) | ☐ Additional maintenance requirements of 14 CFR Section 135.421 applicable for emergency equipment. | | | D10 |



EXHIBIT

Note: The term "FAR" in this document means "14 CFR Part"

c:\docume~1\aso209mg\locals~1\temp\c.lotus.notes.data\~8117384.do
Formdate August 7, 200

## SECTION 2  REQUEST FOR OPERATIONS SPECIFICATIONS FOR THIS AIRCRAFT (continued)

| | INSTRUCTIONS | Document Requirements | | Procedures | training/ Mfr. | |
|---|---|---|---|---|---|---|
| | 1. If you want an operation described below, check the box to the left of the description. | | | | | |
| ☒ | 2. Then, look to see if a ✓ appears to the right of the operation under the procedures, and/or training/Skill and revise your operating procedures and training manual, and prepare to show proficiency as indicated. The SDP will provide any guidance you request. | | | | OPS RM Par | |
| ☐ | Use An Approved Security Program In Helicopter Operations. (to Deplane PAX in sterile areas) | ✓ | ✓ | | K91 | |
| ☐ | Conduct helicopter air ambulance operations in accordance with CFR 14 Part 135. | | ✓ | | AD2 | |
| ☐ | Conduct helicopter night vision goggle operations. | ✓ | ✓ | | A05 | |
| ☐ | Use an approved maintenance program for its helicopter night vision goggle operations. | | | | D0B | |
| ☐ | Use aircraft with nine or less passenger seats with the additional maintenance requirements of 14 CFR Section 135.421 applicable for rotorcraft operations. | | | | G46 | |
| ☐ | Conduct terminal flight operations under instrument flight rules - helicopter. | | | | H00 | |
| ☐ | Conduct operations using basic instrument approach procedures for helicopters. | | | | H90 | |
| ☐ | Conduct Category I IFR landings other than airborne radar approaches - helicopter. | ✓ | ✓ | | H40 | |
| ☐ | Conduct IFR helicopter en route descent (HEDA) procedures. | | | | H00 | |
| ☐ | Use alternate airport IFR weather minimums - helicopter. | | | | H00 | |
| ☐ | Conduct helicopter operations using standard takeoff minimums under Part 135. | | | | H00 | |
| ☐ | Use special restrictions for foreign terminal instrument procedures - helicopter. | | | | H00 | |
| ☐ | Conduct helicopter Category II operations. | ✓ | | | H00 | |
| ☐ | Conduct helicopter Category III operations. | | ✓ | | H00 | |
| ☐ | Use flight control guidance systems for aircraft automatic landing operations - helicopter. | | | | H09 | |
| ☐ | Use manually flown flight control guidance systems certified for aircraft landing operations - helicopter. | ✓ | ✓ | | H11 | |
| ☐ | Conduct helicopter approach operations using an area navigation system. | ✓ | ✓ | | H11 | |
| ☐ | Conduct nonscheduled passenger and all-cargo (scheduled and nonscheduled) special terminal area IFR rotorcraft operations in Class G airspace. | ✓ | | | H11 | |
| ☐ | Use special airport authorizations, limitations, and provisions - helicopter. | | | | H11 | |
| ☐ | Conduct helicopter operations using lower than standard takeoff minimums under Part 135. | | | | H19 | |
| ☐ | Conduct helicopter Category I, ILS, MLS, or GLS approach procedures with specific IFR landing minimums. | | | | H10 | |
| ☐ | Conduct helicopter circle-to-land maneuvers using IFR Category I landing minimums. | ✓ | ✓ | | H10 | |
| ☐ | Conduct helicopter contact approaches using IFR Category I landing minimums. | ✓ | ✓ | | H10 | |
| ☐ | Conduct special non CFR Part 97 instrument approach or departure rotorcraft operations specified for the following airports. | ✓ | ✓ | | H12 | |

**2.6 SPECIAL OPERATIONS SPECIFICATIONS FOR HELICOPTERS**

... "FAR" in this document means "14 CFR Part"

SECTION 2    REQUEST FOR OPERATIONS SPECIFICATIONS
FOR THIS AIRCRAFT (continued)

*NOTICE: PART NUMBERS AND DOCUMENT NUMBERS MUST BE COMPLETE AND ACCURATE.*

| | | | Aircraft Maintenance Manual | Maintenance Manual PSP 602 |
|---|---|---|---|---|
| AIRCRAFT a Enter the Aircraft maintenance publication identification or part number here | | | Revision level | Revision 38 |
| | | | Date | OCTOBER 2002 |

| 2.7 ADDITIONAL REQUIRED AIRCRAFT INFORMATION | ITEM | Make & Model | Maintenance/Overhaul Document/Publication Number (Read Note 1) | Time-In-Service or Part Number (Read Note 2) | | TIME-IN-SERVICE INTERVAL |
|---|---|---|---|---|---|---|
| For Operations under Part 135.411(a)(1) Only ("Nine-or-Less Operations") | ENGINE (Left or Single Engine) | Honeywall ALF-502L-2C | Report #72-07-06 Revision 31 OCT 2000 | PSP 605 Rev 27 | OCT 2002 | 2500 hr 2500 cy |
| | ENGINE (Right if applicable) | " " | " " | " | " | " " |
| | PROPELLER (Left or Single Engine) | | | | | |
| | PROPELLER (Right if applicable) | | | | | |
| | PROPELLER GOVERNOR (Left or Single Engine) | | | | | |
| | PROPELLER GOVERNOR (Right if applicable) | | | | | |
| | PRIMARY GOVERNOR | | | | | |
| | OVERSPEED GOVERNOR | | | | | |

NOTE 1. Please enter the exact name and identification or part number of the publication(s), including revision level, under which the item will be maintained (normally these are the airframe and the engine, propeller, and governor service manuals).

NOTE 2. Please identify the manufacturer's publication(s) by exact number and title that specify the overhaul /replacement time, or time-in-service interval for the item. This is often a service bulletin.

| | Before this application the aircraft was maintained under the following maintenance/inspection program. (Please check) | | | |
|---|---|---|---|---|
| 2.8 MAINTENANCE HISTORY | FAR Parts 43, 91 and 91.409 | ☐ (a) Annual Inspections  ☐ (b) 100 Hour Inspections ☐ (d) Progressive Inspections, or | | |
| | | Air Carrier's Program ☐ (f1) or ☐ (f2) | Manufacturers Program ☒ (f3) or | Other Approved Program ☐ (f4) |

| 2.9 PRIMARY MAINTENANCE BASE | Location of the aircraft records and, if applicable,* the office of the Director Of Maintenance *Optional for Single Pilot and Single Pilot-In-Command Operators | Platinum Jet Management Hangar 70, EXECUTIVE Airport Ft. Lauderdale Fl  33309 |
|---|---|---|

SECTION 2    REQUEST FOR OPERATIONS SPECIFICATIONS
FOR THIS AIRCRAFT (continued)

| 2.10 | MAJOR ALTERATIONS |
|---|---|

A/C Make/Model  CL 600 1411
Registration   N 370 V

LIST ALL MAJOR ALTERATIONS THAT CURRENTLY APPLY TO THE AIRCRAFT;
use additional copies of this page as needed.

| DATE 337 block 7 | Instructions FR Continued Airworthiness | Field Approval | Eighth Manual Supplement | Brief Description of the Major Alteration |
|---|---|---|---|---|
| 29 Sep 2004 | yes | NO | NO | Cabin interior Refurbishment     CIMMS |
| 13 Nov 1982 | NO | NO | NO | Grimes Bally Strobe-light Installation CIM |
| 19 OCT 1981 | No | NO | NO | Original Interior Outfitting Items   CIMM: |
| 21 OCT 1981 | NO | NO | yes | Approval for GNS 500# Installation IAW STCSA45I |
| 21 OCT 1981 | NO | NO | NO | Original Interior Outfitting Items   CIMM: |
| 21 OCT 1981 | NO | ND | NO | Original Outfitting Avionics Installation EL-T CIM |
| 21 OCT 1981 | NO | NO | yes | Original Air Data SSD by RUSM Inst.  CIMM |
| 21 OCT 1981 | NO | NO | NO | Long Range New Install original, Outfitting  CIM |
| 21 OCT 1981 | NO | NO | NO | Original Interior Lighting Outfitting  CIMMS |
| 21 OCT 1981 | No | NO | NO | GNS 500 Installation, Outfitting   CIMM |
| 21 OCT 1981 | NO | NO | NO | Directional Gyros, Original, Outfitting  CIMM |
| 21 OCT 1981 | NO | NO | NO | Radar Indicator Mod, Original outfitting |

| 2.11 | PRESSURE CYLINDERS AND SPHERES |
|---|---|

List all Pressure Cylinders and Spheres installed as Aircraft Equipment
Please refer to HBAW 02-01, July 16, 2002, (or later revision) for details.

| Part Number | Description or Part Name | Manufacturers Maintenance Document | Applicable limitations and provision including current due dates. |
|---|---|---|---|
| 600-65901-1 | Engine Fire Bottle | CL 600 Component Manual P3P 008 | Times Tracked  Hydo due 5/08 |
| 600-65901-1 | Engine Fire Bottle | Rev 50 Dated 8/4/03 | on CIMMS  Hydo due 5/06 |
| 600-65904-1 | APU Fire Bottle | For all Airframe Mounted | Per CAMP  Hydo due 5/08 |
| 900-700-036-33 | Long Range O₂ | Pressure Bottles    " | an all  Hydo due 12/08 |
| 900-700-035-23 | Long Range O₂ | "        "    " | Bottles  Hydo due 12/04 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

c:\docume~1\aso209mg\locals~1\temp\c.lotus.notes.data\~8117364.d

## SECTION 2    REQUEST FOR OPERATIONS SPECIFICATIONS FOR THIS AIRCRAFT (continued)

| 2.10 | MAJOR ALTERATIONS |
| --- | --- |

A/C Make/Model  CL 600 1A11
Registration   N 370V

LIST ALL MAJOR ALTERATIONS THAT CURRENTLY APPLY TO THE AIRCRAFT; use additional copies of this page as needed.

| DATE | Instructions for Continued Airworthiness Field approval | Flight Manual Statement | Brief Description of the Major Alteration |
| --- | --- | --- | --- | --- |
| 20 OCT 81 | NO | NO | NO | Flight Director Installation     Original outfitting |
| 13 OCT 91 | NO | No | NO | Overboard Drain Heater        Original Outfitting |
| 18 OCT 81 | N/A | NO | NO | ELT Mounting Brackets    original outfitting |
| 19 OCT 81 | NO | NO | NO | Vertical Tail Floodlight STC SA883850 outfittin |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| 2.11 | PRESSURE CYLINDERS AND SPHERES |
| --- | --- |

List all Pressure Cylinders and Spheres installed as Aircraft Equipment
Please refer to HBAW 02-01, July 16, 2002, (or later revision) for details.

| Part Number | Description Part Name | Manufacturer's Maintenance Document | Applicable limitations and provision including current due dates. |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# SECTION 3   AIRCRAFT COMPLIANCE STATEMENT FOR 135 OPERATION!

| 3.1   ALL AIRCRAFT | | A/C Make/Model $CL$ $600$ $1411$ <br> Registration $N 370 V$ | | |
|---|---|---|---|---|

**INSTRUCTIONS FOR SECTION 3:**
- Please refer to FAR 135 Subpart C Aircraft and Equipment, and Far 91 as applicable, for the specific requirements of the item listed below
- Check the box ☒ next to the item to indicate that it meets the requirements of the rule.
- Provide all additional information indicated.

| 3.1.1 General requirements | 135.143 | ☒ (a) For each item initialed, the applicant certifies that the equipment meets the applicable Federal Av Regulations. Indicate items that do not apply by "NA." <br> ☒ (b) All equipment not originally installed by the aircraft manufacturer meets FAA approved data show FAA Form(s) 337 which are listed in Section 2.10 of this form and are available for inspection by the FSDO. | | | |
|---|---|---|---|---|---|

| 3.1.2 ATC Transponders | | ☒ TSO ATC Transponder | Make & Model | | Date Installed |
|---|---|---|---|---|---|
| | | | Bendix | $MST-67A$ | 29 Sep 2001 |
| | | | Bendix | $MST-67A$ | 29 Sep 2001 |

| 3.1.3 Equipment requirements: General | 135.144 | ☐ List all portable electronic devices intended to be used by the Flight Crew $N/A$ | | | |
|---|---|---|---|---|---|
| | 135.147 | ☒ Dual controls are installed | | | |
| | 135.149 | ☒ (a) Altimeter(s): Sensitive & adjustable for barometric pressure <br> (b) ☐ Carburetor: Heat/Deice or   ☐ Pressure Carburetor; Alternate air source <br> ☒ (c) For Turbojet airplanes: Third artificial horizon installed according to FAR 121.305(l) | | | |

| 3.1.4 Performance requirements: | 135.181 | ☐ Aircraft operated over-the-top or in IFR conditions | | | |
|---|---|---|---|---|---|
| | 135.183 | ☐ Land aircraft operated over water. | | | |

| 3.1.5 Empty weight and center of gravity: | 135.185 | Currency requirement <br> For multiengine aircraft: Date Last Weighed: $08/20/2002$ | | | |
|---|---|---|---|---|---|

| 3.1.6 Emergency Equipment | 135.155 | FIRE EXTINGUISHERS | Make/Model | Maintenance Document | Aircraft Locatic |
|---|---|---|---|---|---|
| | | 1. Amerex | NFPA #10 | | FWD Cabin |
| | | 2. Amerex | NFPA #10 | | AFT Cabin |
| | 91.205 (b)(12) | APPROVED PERSONAL FLOATATION GEAR <br> Note: This equipment is required for operations in coastal areas. If used, does not meet 135.167 | Make/Model <br> East Coast Aeromarine | No Installed | ☒ one for each a |
| | 91.207 | Emergency Locator Transmitter | Make/Model <br> Pointer 3000 | ELT Type: Dual Frequency | TSO Number: $C91$ |

| 3.1.7 Oxygen Equipment | 135.157 | ☒ Meets all requirements | | |
|---|---|---|---|---|

| 3.1.8 Passenger carrying under VFR at night or VFR over-the-top conditions | 135.159 | ☒ (a) Gyroscopic Rate-of-Turn indicator <br> ☒ (b) Slip skid indicator <br> ☒ (c) Gyroscopic bank-and-pitch indicator <br> ☒ (d) Gyroscopic direction indicator | ☒ (e) Generators meeting FAR specifica <br> (f) For Night Flight Authorization <br> ☒ Anti collision light system <br> ☒ Instrument lights <br> ☒ 2 "D" Cell flashlight or equivalent |
|---|---|---|---|

| 3.1.9 VFR Radio and navigational equipment | 135.161 | | Make/Model | | Make/Model |
|---|---|---|---|---|---|
| | | VHF COM1: Collins VHF-22B | ☒ 8.33 KHz Spacing | DME: | Collins DME-42 |
| | | VOR1: Collins VIR-32 | ☒ FM Immunity | ADF: | Collins ADF-60 |

Page 3-1

c:\docume~1\aso209\mp\locals~1\temp\c.lotus.notes.data\~8117384.

| 3.1 ALL AIRCRAFT (continued) | | | | A/C Make/Model  $CL\ 600\ 1A11$ |
|---|---|---|---|---|
| | | | | Registration  $N\ 320V$ |

| 3.1.10 Passengers Under IFR | 135.163 | ☒ (a) Vertical speed indicator<br>☒ (b) Free air temperature indicator<br>☒ (c) Heated pitot tube for each airspeed indicator<br>☒ (d) Gyroscopic power source indicator or power failure warning indicator | ☒ (e) Alternate static source<br><span style="font-size:smaller">See Order 8340.1a chg 81, app 14, par 34-31 for example</span><br>☐ (f) Single-Engine aircraft <span style="font-size:smaller">(Generator/load combination as specified)</span><br>☐ (g) Multi-engine aircraft <span style="font-size:smaller">(two generators loaded as specified)</span><br>☐ (h) Two independent sources of energy as specified to power gyroscopic instruments |
|---|---|---|---|

| 3.1.11 Radio and Navigational Equipment: IFR Operations | 135.165 | Make/Model | | | |
|---|---|---|---|---|---|
| | | VHF COM2   Collins VHF-22B | ☒ 8.33 Khz Spacing | ☒ two microphones<br>☒ Marker Beacon Receiver<br>☒ two headsets or<br>☐ one headset and one speaker |
| | | VOR NAV2   Collins VIR-32 | ☒ FM Imunity | |

## 3.2  RNAV AND EXTENDED OVERWATER OPERATIONS

**Radio and navigation equipment for Extended Overwater Operation Authorization**

| | Make/Model | SENSORS – INDICATE ALL | APPROVED FOR |
|---|---|---|---|
| 3.2.1 AREA or Long Range NAV Systems: | Universal UNS-1D<br>Date Installed 29 Sep 2001 | ☒ Flight Management System or<br>☐ NAV Management System<br>☐ Loran C  ☐ GPS  ☐ INS/IRS<br>☐ OTHER<br>☐ SHORT-RANGE RNAV<br>  ☐ VOR/DME or<br>  ☐ DME/DME-FMS | ☒ Enroute/Terminal<br>☒ Non-Precision Approache<br>☒ Remote/Oceanic<br>☐ RNP TYPE(s)<br>  Time Limits<br>☐ BRNAV<br>☐ VNAV |
| | Universal UNS-1D<br>Date Installed 29 Sep 2001 | ☒ Flight Management System or<br>☐ NAV Management System<br>☐ Loran C  ☐ GPS  ☐ INS/IRS<br>☐ OTHER<br>☐ SHORT-RANGE RNAV<br>  ☐ VOR/DME or<br>  ☐ DME/DME-FMS | ☒ Enroute/Terminal<br>☒ Non-Precision Approache<br>☒ Remote/Oceanic<br>☐ RNP TYPE(s)<br>  Time Limits<br>☐ BRNAV<br>☐ VNAV |
| 135.165 | Litton LTN-91<br>Date Installed OCT 1981 | ☐ Flight Management System or<br>☐ NAV Management System<br>☐ Loran C  ☐ GPS  ☒ INS/IRS<br>☐ OTHER<br>☐ SHORT-RANGE RNAV<br>  ☐ VOR/DME or<br>  ☐ DME/DME-FMS | ☐ Enroute/Terminal<br>☐ Non-Precision Approache:<br>☐ Remote/Oceanic<br>☐ RNP TYPE(s)<br>  Time Limits<br>☐ BRNAV<br>☐ VNAV |

| 3.2.2 Long-Range Communications System(s) (LRCS) | | Make/Model | LRCS Type | Date Insta |
|---|---|---|---|---|
| | | Collins / 671.4 | ☒ HF  ☐ SAT/COM  ☐ DATALINK  ☐ OTHER | OCT 81 |
| | | Collins / 671.4 | ☒ HF  ☐ SAT/COM  ☐ DATALINK  ☐ OTHER | Oct 81 |
| | | / | ☐ HF  ☐ SAT/COM  ☐ DATALINK  ☐ OTHER | |

| 3.2.3 Airworthiness and Operating Limitations | For each item listed above in sections 3.2.1, and 3.2.2 provide the following:<br>☐ Copies of the portions of the installation approval documents (original Equipment List or FAA Form 3: and<br>☐ Flight Manual Supplements that show the make and model of the equipment and approval for the requested operation. Contact the FSDO if there are any questions. |
|---|---|

| 3.2.4 Emergency equipment Extended overwater operations | 135.167 | ☒ (a) The following are conspicuously marked and easily accessible to the occupants if ditching occurs | | |
|---|---|---|---|---|
| | | | Make/Model | Maintenance Document/I |
| | | ☒ Life Preserver with Light for each occupant. | EAM   1 K3E-35L8 | 25-60-7 RevS<br>30 APO |
| | | ☐ Life rafts as specified in 135.167(b) & (c). | EAM   1 EAM T-12 | 25-60-21 Rev 1<br>Feb 20/01 |

SECTION 3 AIRCRAFT COMPLIANCE STATEMENT FOR 135 OPERATIONS
(continued)

# PLEASE COMPLETE THIS PAGE ONLY IF APPLICABLE.

| 3.3 | TURBINE-POWERED, TURBOJET, AND/OR TEN-OR-MORE PASSENGER AIRCRAFT. | A/C Make/Model  $CL\ 600\ (ALi$ |
| | | Registration  N 370 V |

| 3.3.1 Proving Test Flights | 135.145 | ☒ NOT REQUIRED | ☐ REQUIRED | ☐ Proving test plan is scheduled on page 1-1 <br> ☐ Proving tests are scheduled on page 1-1 <br> ☐ Request for deviation is scheduled on page 1- |
|---|---|---|---|---|

| | 135.150 | ☐ | Public address and crewmember interphone systems | | |
|---|---|---|---|---|---|
| | | | | Make/Model/Series | Date (Insta |
| | 135.151 | ☒ | Cockpit Voice Recorders | Sundstrand  980-6005(or) | OCT |
| 3.3.2 Additional Equipment Requirements | 135.151(d) | ☐ | Dual Headsets/Boom Mics | | |
| | 135.152 | ☒ | Flight Recorders | Lockheed  319 | OCT 8 |
| | 135.153 | ☐ | Ground Proximity Warning System | | |
| | 135.154 | ☒ | Terrain Awareness & Warning System (TAWS) <br> ☐ Class A  ☒ Class B | Universal  TAWS | Sep 2a |
| | 135.156 | ☒ | Pitot heat indication systems | | |

| 3.3.3 Additional Airworthiness Requirements | 135.169 | (a) | For all large airplanes (more than 12,500 pounds, maximum certificated takeoff weight): <br> The aircraft <br> ☐ is a commuter category airplane, or <br> ☐ meets the additional requirements of FAR 121.213 through 121.283, and 121.307; <br> (SEE NOTE) <br> (b) For Reciprocating-engine airplanes configured for ten-or-more passengers or <br> For Turbopropeller-powered Small Airplanes configured for ten-or-more passengers: <br> ☐ meets all applicable conditions specified in 135.169(b) (SEE NOTE) <br> NOTE: Applicants must attach a conformity statement showing compliance with a additional rules indicated in the applicable paragraph above. <br> (c) For all ten-or-more small airplanes <br> state the maximum Passenger seating configuration _____ <br> (d) Cargo or baggage compartments: All transport category airplanes type certificate after January 1, 1958. <br> ☐ each class C or D cargo compartments is not greater than 200 cubic ft in volume, or <br> ☐ meets all applicable conditions specified in this 135.169(d) |
|---|---|---|---|
| | 135.170 | ☒ | Materials for compartment interiors  certificates on file |
| | 135.171 | ☒ | Shoulder harness Installation at flight crewmember stations |

| | | | Make/Model/Series | Date Installe |
|---|---|---|---|---|
| | 135.173 | ☐ | Airborne thunderstorm detection equipment requirements | | |
| | 135.175 | ☒ | Airborne weather radar equipment requirements | Sperry  Primus 800 | 8/10 Oc |
| | 135.177 | ☐ | Emergency equipment requirements for aircraft having a passenger seating configuration of more than 19 passengers | | |
| | 135.180 | ☒ | Traffic Alert and Collision Avoidance System | Bendix/King  67A <br> ☐ TCAS I  ☒ TCAS II <br> TCAS II Software Version 7 or higher?  ☒ Yes  ☐ No | Sep 2c |

# SECTION 4  FAR 135 AIRWORTHINESS CHECKLIST

We suggest you use this checklist frequently and especially before presenting the aircraft to the FAA for inspection or before an FAA check ride.

A/C Make and Model  C L 6 O O    1 A 1 1                     Registration  N 3 2 0 U

CHECK THE BOX TO INDICATE COMPLIANCE

| INSPECTION ITEM |
|---|
| ☒ Check If the item meets all applicable FAR Requirements |

**REQUIRED PAPERS AND RECORD INFORMATION**

| | |
|---|---|
| ☒ | The Registration Certificate is on board and current. |
| ☒ | The Airworthiness Certificate is on board and current. |
| ☒ | The Radio Station License is on board and current. |

**OPERATING HANDBOOK OR FLIGHT MANUAL**

| | |
|---|---|
| ☒ | FAA Approved Aircraft Flight Manual (AFM) or Pilots Operating Handbook is current, complete, and in serviceable condition. |
| ☒ | AFM contains Flight Manual Supplements that are current and applicable to the installed Autopilot/Flight Director, Navigation equipment, and other installed equipment to which a Flight Manual supplement applies. |
| ☒ | All flight deck placards required by the Type Certificate or the AFM are secure and readable. |
| ☒ | The flight deck contains all operating manuals and/or placards required by TC, STC, or FAA Form 337s. |
| ☒ | All switches, circuit breakers, controls, etc, are properly labeled |
| ☒ | AFM contains current weight and balance data, and all obsolete weight and balance data is superseded; or, for aircraft not requiring an AFM, the current weight and balance and equipment list is in the aircraft. |
| ☒ | AFM contains a current and complete equipment list. |
| ☒ | For multiengine aircraft, the AFM contains a weighing record showing the aircraft was weighed within the last three years. The record includes an equipment list, which describes the approved aircraft configuration at the time of weighing. The weighing record has the signature and certificate number of the person or agency doing the work and the date of completion. |

**AIRCRAFT RECORDS OR EQUIPMENT INFORMATION**

| | |
|---|---|
| ☒ | Aircraft Maintenance Log (14 CFR 135.65) contains no open Mechanical Irregularities |
| ☒ | Minimum Equipment List is on board and current. |
| ☒ | Air Carrier Operations Manual is on board and Current. |
| ☒ | Deferred Maintenance Log contains no items deferred beyond the time allowed in the MEL. |
| ☐ | |

| INSPECTION ITEM |
|---|
| ☒ Check if the item meets all applicable FAR Requirements |

**INTERIOR INSPECTION**

| | |
|---|---|
| ☒ | All internal cabin placards required by the Type Certificate of the AFM are secure and readable. |
| ☒ | Passenger Briefing Cards meet 14 CFR 135 Requirements. |
| ☒ | Required emergency equipment is on board, properly stowed and inspected. |
| ☐ | |
| ☐ | |
| ☐ | |

**EXTERIOR INSPECTION**

| | |
|---|---|
| ☒ | The aircraft has the proper equipment and approval documentation required by 14 CFR 135 Sub-Part C. All equipment is operating properly. |
| ☒ | All external placards, required by the Type Certificate or the AFM, are secure and readable. |
| ☒ | All cowl fasteners, screws, etc., are secure. |
| ☒ | Antennas are free from erosion. |
| ☒ | ADF Sense antenna is under spring tension. |
| ☒ | All static wicks installed, none-broken except as allowed under MEL. No bonding straps broken |
| ☒ | The aircraft Make, Model and Serial Number data are on the outside of the fuselage. |
| ☒ | All instruments, systems and equipment are operating properly; the aircraft is airworthy and legal to fly. |
| ☐ | |

**MAINTENANCE RECORDS**

| | |
|---|---|
| ☒ | The maintenance records show that all airworthiness inspections are current including, Annual/100 hr or Programmed Inspection, Altimeter, Encoder, Static System, ATC Transponder, etc. |
| ☒ | All required maintenance, including maintenance of life limited items, is current. |
| ☒ | The maintenance records include an Airworthiness Directive (AD) Listing showing that all ADs are complied with including Recurring ADs. The listing must comply with FAR 91.417(a)(i)(v) |
| ☐ | |

I certify that, to the best of my knowledge, the information contained in this report is complete and accurate.

Noel A ...          DOM                              5/5/04
Director of Maintenance                              Date

# SECTION 4   FAR 135 AIRWORTHINESS CHECKLIST

**We suggest you use this checklist frequently and especially before presenting the aircraft to the FAA for inspection or before an FAA check ride.**

A/C Make and Model _Canadair_ _CL 600 1A11_        Registration _N370V_

CHECK THE BOX TO INDICATE COMPLIANCE

## INSPECTION ITEM

☒ Check if the item meets all applicable FAR Requirements

☒ The Registration Certificate is on board and current.
☒ The Airworthiness Certificate is on board and current.
☒ The Radio Station License is on board and current.

☒ FAA Approved Aircraft Flight Manual (AFM) or Pilots Operating Handbook is current, complete, and in serviceable condition.
☒ AFM contains Flight Manual Supplements that are current and applicable to the installed Autopilot/Flight Director, Navigation equipment, and other installed equipment to which a Flight Manual supplement applies.
☒ All flight deck placards required by the Type Certificate or the AFM are secure and readable.
☒ The flight deck contains all operating manuals and/or placards required by TC, STC, or FAA Form 337s.
☒ All switches, circuit breakers, controls, etc., are properly labeled
☒ AFM contains current weight and balance data, and all obsolete weight and balance data is superseded; or, for aircraft not requiring an AFM, the current weight and balance and equipment list is in the aircraft.
☒ AFM contains a current and complete equipment list.
☒ For multiengine aircraft, the AFM contains a weighing record showing the aircraft was weighed within the last three years. The record includes an equipment list, which describes the approved aircraft configuration at the time of weighing. The weighing record has the signature and certificate number of the person or agency doing the work and the date of completion.

☒ Aircraft Maintenance Log (14 CFR 135.65) contains no open Mechanical Irregularities
☐ Minimum Equipment List is on board and current.
☐ Air Carrier Operations Manual is on board and current.
☒ Deferred Maintenance Log contains no items deferred beyond the time allowed in the MEL.
☐

## INSPECTION ITEM

☒ Check if the item meets all applicable FAR Requirements

☒ All internal cabin placards required by the Type Certificate or the AFM are secure and readable.
☒ Passenger Briefing Cards meet 14 CFR 135 Requirements.
☒ Required emergency equipment is on board, properly stowed, and inspected.
☐
☐
☐

☒ The aircraft has the proper equipment and approval documentation required by 14 CFR 135 Sub-Part C. All equipment is operating properly.
☒ All external placards, required by the Type Certificate or the AFM, are secure and readable.
☒ All cowl fasteners, screws, etc., are secure.
☒ Antennas are free from erosion.
☒ ADF Sense antenna is under spring tension.
☒ All static wicks installed, none broken except as allowed under MEL. No bonding straps broken
☒ The aircraft Make, Model and Serial Number data are on the outside of the fuselage.
☒ All Instruments, systems and equipment are operating properly; the aircraft is airworthy and legal to fly.
☐

☒ The maintenance records show that all airworthiness inspections are current including, Annual/100 hr or Programmed Inspection, Altimeter, Encoder, Static System, ATC Transponder, etc.
☒ All required maintenance, including maintenance of life limited items, is current.
☒ The maintenance records include an Airworthiness Directive (AD) Listing showing that all ADs are complied with including Recurring ADs. The listing must comply with FAR 91.417(a)(i)(v)
☐

I certify that, to the best of my knowledge, the information contained in this report is complete and accurate.

_Noel Allen_        5/5/04
Director of Maintenance        Date

Note: The form "FAR" in this document means "14 CFR Part"        c:\docume~1\aso209mo\locals~1\temp\c.lotus.notes.data\~8117364.doc

03/26/2007   12:55   8360951804                                            PAGE   05



PLANS...
...

| REACTION POINTS | B/N | | | | | REPORT NUMBER PW20102 |
|---|---|---|---|---|---|---|
| | | | | | | DATE: 20-Aug-02 |
| 1 st. WEIGHING | | | | | | |
| LEFT MAIN (OTBD) | 270443 | 5911 | 0 | 0 | 5911 | |
| LEFT MAIN (INBD) | 270448 | 6016 | 0 | 0 | 6016 | |
| RIGHT MAIN (INBD) | 270450 | 5311 | 0 | 0 | 5311 | |
| RIGHT MAIN (OTBD) | 270441 | 5705 | 0 | 0 | 5705 | |
| TOTAL MAINS | | 22523 | 0 | 0 | 22523 | |
| NOSE | 270444 | 2210 | 0 | 0 | 2210 | |
| TOTAL AS WEIGHED | | 24733 | 0 | 0 | 24733 | |
| 2 nd. WEIGHING | | | | | | |
| LEFT MAIN (OTBD) | 270443 | 5933 | 0 | 0 | 5933 | |
| LEFT MAIN (INBD) | 270448 | 6031 | 0 | 0 | 6031 | |
| RIGHT MAIN (INBD) | 270450 | 5307 | 0 | 0 | 5307 | |
| RIGHT MAIN (OTBD) | 270441 | 5701 | 0 | 0 | 5701 | |
| TOTAL MAINS | | 22522 | 0 | 0 | 22522 | |
| NOSE | 270444 | 2212 | 0 | 0 | 2212 | |
| TOTAL AS WEIGHED | | 24734 | 0 | 0 | 24734 | |

| THE AVERAGE OF THE TWO WEIGHINGS | | | | | | Arm INS. | MOMENT LBS/INS |
|---|---|---|---|---|---|---|---|
| LEFT MAIN (OTBD) | 270443 | 5,432.00 | 0.00 | 0.00 | 5,432.00 | | |
| LEFT MAIN (INBD) | 270448 | 6,078.50 | 0.00 | 0.00 | 6,078.50 | | |
| TOTAL LEFT MAINS | | 11,510.50 | 0.00 | 0.00 | 11,510.50 | 542.50 | 6,244,446.25 |
| RIGHT MAIN (INBD) | 270450 | 5,309.00 | 0.00 | 0.00 | 5,309.00 | | |
| RIGHT MAIN (OTBD) | 270441 | 5,703.00 | 0.00 | 0.00 | 5,703.00 | | |
| TOTAL RIGHT MAINS | | 11,012.00 | 0.00 | 0.00 | 11,012.00 | 542.50 | 5,974,010.00 |
| TOTAL MAINS | | 22,522.50 | 0.00 | 0.00 | 22,522.50 | | |
| NOSE | 270444 | 2,211.00 | 0.00 | 0.00 | 2,211.00 | 227.90 | 503,886.90 |
| TOTAL AVERAGE WT. | | 24,733.50 | 0.00 | 0.00 | 24,733.50 | 514.38 | 12,722,343.15 |
| Deduction from Pg. 3 | | | | | 0.00 | DIV/0! | 0.00 |
| Additions from Pg. 3 | | | | | 119.00 | 524.80 | 62,451.20 |
| NEW BASIC EMPTY WT | | | | | 24,852.50 | 514.63 | 12,784,794.35 |

| | ARM | LMAC | MAC | % | %MAC |
|---|---|---|---|---|---|
| %MAC= | 514.63 | 428.00 | 92.60 | | 23.5 |

Page 3 of 4

**Exhibit G**

# *Record of Telephone Conversation*

**Name:** Noel Blevins
**Address:** Darby Aviation
**Phone:** 800-327-2924
**Date:** February 23, 2005
**Description:** Meeting At Darby Aviation, Muscle Shoals, AL

---

On February 23, 2005 at a meeting attended by myself and Ricky Messer (PMI Darby Aviation) representing the FAA and James Roberts, Dane Rheinschmidt, Noel Blevins, Stacy McCray and John Morrison (telephonic) representing Darby Aviation, a request for a copy of the most current copy of the weight and balance documements was made. Mr. Noel Blevins, maintenance manager for Darby Aviation stated that he and Mr. Bud Darby had seen the weight and balance for the aircraft dated in October or November of 2002. He stated that this was done when they were in FLL looking at the aircraft prior to adding it to their FAA Part 135 certificate. A review of the Birmingham FSDO office copy of the Notice Of Intent To Add An Aircraft indicated this procedure was accomplished on 8/20/2002.

I asked if they had a copy of this document and if they could recall who had completed this check. Mr. Blevins stated that the weight and balance documents were kept in the aircraft in a folder separate from the AFM. He also stated that this aircraft weighing had been accomplished in FLL at Platinum by Mr. Brian McKenzie who is also the RII for Darby Aviation at the present time.

He stated that Mr. McKenzie did not have a copy of the weight and balance documents as he had previously asked that they be produced after the accident in TEB.


Edward T. Jeszka
POI, Darby Aviation
Aviation Safety Inspector


Ricky Messer
PMI, Darby Aviation
Aviation Safety Inspector

**Exhibit H**

## AIRCRAFT WEIGHING FORM

| AIRCRAFT MODEL: BOMBARDIER CHALLENGER 600-1A11 | SERIAL: 1030 | REGISTRATION: N60S |
|---|---|---|
| REGISTERED OWNER: DDH AVIATION | | DATE WEIGHED: 10-15-04 |
| ADDRESS: 2800 W. MOCKINGBIRD LANE | PLACE: | FXE |
| DALLAS TX. 75235 | TACH: ACTT:7358.5 HM: | |

| WEIGHING POINT | SCALE READING | TARE | NET WEIGHT | ARM | MOMENT |
|---|---|---|---|---|---|
| LEFT MAIN JACK | 11,100.0 | 0 | 11,100.0 | 544.3 | 6,041,730.0 |
| RIGHT MAIN JACK | 10,980.0 | 0 | 10,980.0 | 544.3 | 5,976,414.0 |
| NOSE/TAIL JACK | 2,820.0 | 0 | 2,820.0 | 278.0 | 783,960.0 |
| TOTAL AS WEIGHED | 24,900.0 | 0 | 24,900.0 | 514.1 | 12,802,104.0 |
| LESS USABLE FUEL ( GAL) | | | | | |
| LESS USABLE FUEL ( GAL) | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| NEW AIRCRAFT BASIC TOTALS | | | 24,900.0 | 514.1 | 12,802,104.0 |

### NOTES

AIRCRAFT WEIGHED IN LEVEL FLIGHT ATTITUDE INSIDE HANGAR.

WEIGHED EMPTY FUEL AND FULL OILS WITH TWO CREW SEATS, A LEFT FORWARD STORAGE

CLOSET, A RIGHT FORWARD GALLEY, EIGHT SINGLE PASSENGER SEATS, A LEFT AFT TABLE,

A RIGHT AFT THREE PLACE BENCH SEAT, A RIGHT AFT DIVAN AND AFT LAVATORY INSTALLED.

| SCALES MODEL JP50000-3 | SERIAL M1477E CALIBRATED ON: APRIL 16, 2004 |
|---|---|
| NEW AIRCRAFT BASIC WEIGHT 24,900.0 LB. | NEW BASIC C.G. 514.1 IN. |
| AIRCRACT GROSS WEIGHT 41,400.0(RAMP) LB. | NEW USEFUL LOAD 16,500.0 LB. |
| WEIGHED BY | AIRFRAME LICENSE NO. 98724373 |

## Aviation Specialty Services Corp.

2241 Hammondville Rd.
Pompano Beach, FL 33062
Ph: 954-816-7399 • Fax: 954-960-0764
afmohamed@hotmail.com